**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PERRY SHAPIRO, Individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| ASSERTIO HOLDINGS, INC., DAN PEISERT, and PAUL SCHWICHTENBERG, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Perry Shapiro ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Assertio Holdings, Inc. ("Assertio" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Assertio securities between March 9, 2023 and November 8, 2023, both dates inclusive (the "Class Period"), seeking

to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Assertio is a commercial pharmaceutical company that purportedly offers differentiated products to patients utilizing a non-personal promotional model. One of the Company's primary pharmaceutical products is Indocin, an oral and suppository solution for the treatment of moderate to severe rheumatoid arthritis. However, because there are no patents covering the Indocin products, Assertio can potentially face competition at any time from the introduction of generic versions of these products made by competitors.

3.     In July 2023, Assertio acquired Spectrum Pharmaceuticals, Inc. ("Spectrum"), a biopharmaceutical company focused on novel and targeted oncology, along with Spectrum's injection asset Rolvedon (the "Spectrum Acquisition"). In a press release announcing the closing of the acquisition, Assertio's Chief Executive Officer ("CEO") Defendant Dan Peisert ("Peisert") was quoted as stating, in relevant part, "[w]e look forward to building on the successful early results in the [Rolvedon] Injection launch for the remainder of 2023, driving the business toward [its] goal of accretive contribution to our Adjusted EPS and operating cash flow in 2024."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's reliance on Indocin products to boost its net income was unsustainable given the risk of generic competition; (ii) the Spectrum Acquisition was less valuable than Assertio had represented to investors; (iii) accordingly, Assertio had overstated the positive impact the sale of Indocin products

and the Spectrum Acquisition were likely to have on the Company's profitability; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

5.      On August 3, 2023, Zydus Lifesciences Limited ("Zydus"), a generic pharmaceutical company, received approval from the U.S. Food and Drug Administration ("FDA") to manufacture and market 50mg indomethacin suppositories, the generic version of the Company's Indocin Suppositories.  Specifically, the FDA granted Zydus 180-day Competitive Generic Therapies ("CGT") exclusivity to market the product.  Following the FDA's decision, Assertio withdrew its 2023 financial outlook previously issued in May 2023.

6.      On this news, Assertio's stock price fell $2.44 per share, or 45.6%, to close at $2.91 per share on August 4, 2023.

7.      Then, on November 8, 2023, Assertio issued a press release announcing its financial results for its third quarter ("Q3") of 2023.  Among other results, Assertio reported Q3 non-GAAP earnings-per-share of $0.01, missing consensus estimates by $0.09, and revenue of $35.63 million, missing consensus estimates by $14.8 million.  Defendant Peisert called the Company's Q3 2023 results "disappointing," noting that "the loss of Indocin exclusivity and Rolvedon results below expectations [drove] significant charges to our net income" and that the Company was "learning" that "certain aspects" of its July 31, 2023 acquisition of Spectrum Pharmaceuticals Inc. "may not be everything we initially expected."

8.      On this news, Assertio's stock price fell $0.92 per share, or 43.19%, to close at $1.21 per share on November 9, 2023.

9.      On January 3, 2024, Assertio issued a press release announcing that Defendant Peisert was stepping down from his role as the Company's CEO.

10.     On this news, Assertio's stock price fell $0.12 per share, or 10.96%, to close at $1.01 per share on January 4, 2024.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Assertio is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

15.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, acquired Assertio securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17.     Defendant Assertio is a Delaware corporation with principal executive offices located at 100 S. Saunders Road, Suite 300, Lake Forest, Illinois, 60045.  Assertio's common stock trades in an efficient market the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "ASRT".

18.     Defendant Peisert has served as the Company's CEO at all relevant times.

19.     Defendant Paul Schwichtenberg ("Schwichtenberg") served as the Company's Chief Financial Officer at all relevant times.

20.     Defendants Peisert and Schwichtenberg are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Assertio's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Assertio's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Assertio, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Assertio and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Assertio is a commercial pharmaceutical company that purportedly offers differentiated products to patients utilizing a non-personal promotional model.  One of the Company's primary pharmaceutical products is Indocin, an oral and suppository solution for the treatment of moderate to severe rheumatoid arthritis.

### Materially False and Misleading Statements Issued During the Class Period

24.     The Class Period begins on March 9, 2023, the day after Assertio filed an Annual Report on Form 10-K with the SEC after the market closed, reporting the Company's financial and operating results for the year ended December 31, 2022 (the "2022 10-K").  In providing an overview of the Company's business, the 2022 10-K stated, in relevant part:

> We are a commercial pharmaceutical company offering differentiated products to patients utilizing a non-personal promotional model. Our commercial portfolio of branded products focuses on three areas: neurology, rheumatology, and pain and inflammation. We have built our commercial portfolio through a combination of increased opportunities with existing products, as well as through the acquisition or licensing of additional approved products.

25.     Further, in discussing the Company's business strategy, the 2022 10-K stated, in relevant part:

> Our success depends on our people, the unique and scalable digital platform we have created, and the opportunities that exist in the marketplace. We believe the following key elements enable us to be commercially successful:
>
> - Leadership with a proven track record of successful results;
> - significant experience in completing business development transactions in the healthcare space such as mergers, asset acquisitions, asset divestitures, and commercialization/licensing arrangements;
> - a strategy that leverages digital and non-personal promotion to engage our customers and drive efficiency;
> - experience in key elements of commercialization including, but not limited to, market access, patient services, distribution, brand and digital marketing, non-personal promotion, analytics, and market research;

- impactful brand promise for physicians and patients that reduces hassle and improves accessibility through access programs; and
- commercial capabilities and financial position that enable us to seamlessly expand our product offerings.

Our strategy is to grow through product acquisitions, commercialization agreements, licensing or technology agreements, equity investments, and business combinations. Our products have been acquired or licensed through business development activities. We continue to seek additional products, with a preference for accretive, on-market products that have patent life or exclusivity remaining that we can add to our portfolio of medicines. Secondarily, we also remain open to late-stage assets or other investments into medical devices, informatics, or technology. We are seeking products that are a fit with our commercial platform and can be leveraged and distributed via digital and non-personal promotional means. Our platform is specialty area agnostic and we can potentially acquire products across a number of therapeutic areas, while requiring minimal additional resources.

26.     Finally, in discussing the Company's product sales, the 2022 10-K stated, in relevant part:

For the year ended December 31, 2022, product sales primarily consisted of sales from INDOCIN products, CAMBIA, Otrexup and SPRIX.

INDOCIN net products sales increased $39.8 million from $60.6 million for the year ended December 31, 2021 to $100.3 million for the year ended December 31, 2022, primarily due to favorable net pricing as a result of an increase in gross price and volume mix shift to more profitable channels, partially offset by lower volume.

27.     Appended as exhibits to the 2022 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, attesting that "[t]he information contained in the [2022 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28.     On April 25, 2023, Assertio issued a press release entitled "Assertio Holdings, Inc. to Acquire Spectrum Pharmaceuticals, Inc. in All Stock and CVR Transaction."  The press release stated, in relevant part:

Assertio [. . .] and Spectrum [. . .] today announced that they have entered into a definitive agreement pursuant to which Assertio will acquire all outstanding shares of Spectrum in an all-stock and contingent value rights ("CVR") transaction.

"The addition of Spectrum's commercial capabilities and ROLVEDON, a novel long-acting G-CSF product recently launched into a blockbuster market in October 2022, exemplifies Assertio's attractiveness as an acquirer of new, accretive assets across diverse therapeutic categories, and ability to continue their growth and achieve profitable contributions faster and more efficiently than could be achieved on a standalone basis. We intend to retain the majority of Spectrum's commercial infrastructure, which we believe is synergistic to our digital non-personal platform, deploying these complementary dual channels to support clinical messaging, reimbursement education and ROLVEDON awareness to further aid and accelerate its launch," said [Defendant] Peisert[.]

"We are excited to combine with Assertio in a transaction that will deliver significant value to our stockholders and the opportunity to share in the future upside of ROLVEDON," said Tom Riga, President and Chief Executive Officer of Spectrum[.] "Our mission at Spectrum has always been to make a difference in the lives of patients and with Assertio, we have a partner that will enable us to deliver on this promise. Our combined assets and commercial infrastructure will position us to accelerate ROLVEDON's launch for the benefit of patients, maximize its potential and drive further growth. We are proud of the launch trajectory our team has achieved with ROLVEDON and look forward to an exciting new chapter."

\*\*\*

**Transaction Strategic and Financial Rationale**

**Strengthened Commercial Infrastructure and Resources**: Assertio's innovative digital non-personal sales model complements Spectrum's in-person commercial infrastructure, providing greater market access and resources than either company as a standalone entity.

**Expected to Be Accretive to Adjusted EPS and Operating Cash Flow in 2024**: Assertio intends to retain the majority of Spectrum's commercial team and add operating costs of approximately $60 million annually. The remaining cost synergies are expected to accelerate and enhance the profit opportunities for the combined company and generate double-digit accretion to adjusted EPS and increased operating cash flow in 2024.

**Enhanced IP Portfolio**: ROLVEDON's intellectual property protection is anticipated to extend through 2036, complementing Assertio's portfolio of traditional and non-traditional IP protection, including assets with protection extending beyond 2040 and plans to secure additional protections on existing assets.

**Improved Strategic Profile**: The transaction enables the combined company to have a more scalable and competitive infrastructure for continuing the development

and acquisition of existing and prospective new commercial- and late development-stage products suited to Assertio's unique omni-channel sales strategy.

**Platform Diversification**: In addition to Assertio's key assets Indocin, Sympazan and Otrexup, Spectrum's key asset ROLVEDON will represent meaningful further asset diversification. ROLVEDON is a long-acting growth factor (G-CSF) indicated to decrease the incidence of infection, as manifested by febrile neutropenia, in adult patients with non-myeloid malignancies receiving myelosuppressive anti-cancer drugs associated with clinically significant incidence of febrile neutropenia.

**Access to Capital Markets**: With enhanced scale and greater diversification of revenue generating commercial assets, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the capital markets.

29.     On May 9, 2023, Assertio issued a press release announcing the Company's Q1 2023 financial results and raising its full year 2023 outlook.  The press release stated, in relevant part:

"Since becoming CEO a little over two years ago, we adopted a strategy to increase profitability, improve our balance sheet, reduce our cost of capital, diversify our business and create internal and external opportunities for growth," said [Defendant] Peisert[.] "Through the adoption of our innovative digital non-personal sales model, significant growth and cash flow, the refinancing of our indebtedness and our most recent completed acquisition of Sympazan, we have achieved most of what we set out to do and put Assertio on a pathway for significant and sustainable growth over the coming years."

First quarter net product sales performed above internal expectations in what is typically a seasonally low quarter, delivering 18% growth in net product sales, more than $25 million of adjusted EBITDA and almost $23 million in cash flow from operations. Results were driven by continued growth of Indocin and the first full quarter of sales for Sympazan. As a result, the Company is raising its full-year net product sales and adjusted EBITDA outlook.

30.     That same day, Assertio hosted an earnings call with investors and analysts to discuss the Company's Q1 2023 results (the "Q1 2023 Earnings Call").  During the scripted portion of the Q1 2023 Earnings Call, Defendant Peisert stated, in relevant part:

[O]ur priority should not surprise -- should not be a surprise to anyone who has followed our company. They are, first, to continue to build improve the value of

our non-personal commercial platform; second, to maintain INDOCIN and execute on the INDOCIN life cycle management initiatives; third, business development to execute on our M&A plans to diversify our portfolio and create future growth opportunities for the business.

***

With respect to INDOCIN, our goal as we entered the year was to maintain demand. We made some very impactful changes to the product by exiting from an unprofitable segment. To date, we've been able to retain the majority of those volumes and the team is incented to maintain the same level of volume as the prior year.

31.     On July 27, 2023, Assertio issued a press release entitled "Assertio Holdings, Inc. Announces Favorable Vote on Proposed Acquisition of Spectrum Pharmaceuticals." The press release quoted Defendant Peisert stating, in relevant part, "[w]e believe this transaction provides extensive new growth opportunities and will be accretive to our stockholders in 2024."

32.     On July 31, 2023, Assertio issued a press release announcing the closing of the Spectrum Acquisition. The press release stated, in relevant part:

"We are pleased to close the acquisition of Spectrum and its ROLVEDON® (eflapegrastim-xnst) Injection asset, as well as bring onboard an incredible commercial team with proven successful results," said [Defendant] Peisert[.] "We believe this combination will expand and diversify Assertio's revenue base, complement our digital non-personal marketing capabilities and enhance our IP portfolio as we continue to scale our platform and its capabilities. We look forward to building on the successful early results in the ROLVEDON® (eflapegrastim-xnst) Injection launch for the remainder of 2023, driving the business toward our goal of accretive contribution to our Adjusted EPS and operating cash flow in 2024."

33.     On August 3, 2023, Zydus received approval from the FDA to manufacture and market 50mg indomethacin suppositories, the generic version of the Company's Indocin Suppositories. Specifically, the FDA granted Zydus 180-day CGT exclusivity to market the product.

10

34.     That same day, Assertio issued a press release announcing the Company's Q2 2023 financial results. The press release stated, in relevant part, that "Assertio is withdrawing its 2023 financial outlook to assess the recent news of a generic indomethacin suppository approved by the [FDA]."

35.     On this news, Assertio's stock price fell $2.44 per share, or 45.6%, to close at $2.91 per share on August 4, 2023.

36.     Despite this news, the press release announcing the Company's Q2 2023 financial results also stated, in relevant part:

> "The acquisition of Spectrum Pharmaceuticals and its innovative ROLVEDON™ asset is transformative to our Company. ROLVEDON continues its exceptional launch trajectory as second quarter sales increased to $21.0 million[], from $15.6 million in the first quarter. We intend to maintain their highly effective commercial team to continue expanding on the success of this exciting new asset. We also expect to deploy this team's proven market access and contracting capabilities in support of our other assets, particularly Sympazan, Otrexup and Sprix. Once fully integrated, Assertio will benefit from a more diverse revenue base, greater intellectual property protection and an enhanced commercial capability in support of our long-term growth strategy."

> "In the second quarter, we continued to deliver on our core growth, cash flow and portfolio diversification goals, all supported by our innovative and cost efficient digital non-personal sales model," said [Defendant] Peisert[.]

37.     Also on August 3, 2023, Assertio hosted an earnings call with investors and analysts to discuss the Company's Q2 2023 results (the "Q2 2023 Earnings Call"). During the scripted portion of the Q2 2023 Earnings Call, Defendant Peisert continued to tout the Spectrum Acquisition and downplayed the FDA's decision to grant Zydus approval to manufacture and market the generic version of the Company's Indocin Suppositories, stating, in relevant part:

> The acquisition of Spectrum marks a significant turning point for Assertio, providing immediate diversification of revenues a sustainable near-term growth driver and long-term patent protection. The asset, the commercial infrastructure and sales model are also aligned with our vision of where we can effectively operate in

this competitive pharmaceutical landscape our intelligent contracting and market access are the foundation of the go-to-market model.

\*\*\*

Now with a healthier balance sheet and a growth asset, -- that discipline will still be there to help foster this company towards sustainable growth. ***We've proven we can manage through the ups and downs of loss of exclusivity***, and we've built and now acquired a first-class commercial team from Spectrum. That can only enhance our capabilities to grow assets and scale.

\*\*\*

Today, we're not able to provide guidance as we initially intended. We just learned a few hours ago, the FDA has approved a generic indomethacin products today. When we issued guidance, we like to have as much information at our disposal as possible and now we believe it's prudent to withdraw our outlook until we know more information.

Today, all we know as a single competitor was approved and they received CGT status, which means no other generics can be approved for 180 days. We are not aware of their launch timing. ***What I can offer is that Assertio is not afraid of this nor are we hiding from this. It has been well known that indomethacin had no intellectual property nor exclusivity protecting it and generic entry risk was always in the background***.

***So we have been preparing for it, and we are ready to defend it***. One example of how we can defend is evident in our financials this year. As many of you know, we lost exclusivity for CAMBIA in January of this year and 3 competitive generics entered the market in addition to 1 authorized generic.

Normally, in these situations, the brands do not do well in the first 6 to 9 months following [loss of exclusivity ("LOE")]. However, year-to-date, we've retained 36% to the prior year volumes and 34% of the prior year revenues, which is an outstanding result when many of the analogs in a competitive market like this, would suggest retention rates near 10% of volume and between 0% to 10% of revenue, because of reduction in end customer inventory.

This is all due to the outstanding execution of our commercial team preparation for the LOE and the early identification that patient refills were still being covered by commercial insurers and quickly utilizing the resources in our hub and our patient support programs to encourage a high refill rate. An example of our market access programs and strategy at work. ***We're confident that we can do something similar with INDOCIN. And in this case, we only have a single competitor and the analogs are far better than with 4 as was the case with CAMBIA***.

***

While the news today wasn't as comp and circumstances we had planned, and we certainly weren't aware that the generic was coming. But it does highlight our strategic need to diversify the business and why the merger of Spectrum was important.

We will have some short-term obstacles to overcome, but we are a strong and committed team, and we will overcome them. We are a far stronger company now than we were a few years ago. And I believe that we are well positioned to come through this even stronger and create value for all shareholders.

(Emphasis added).

38.     The statements referenced in ¶¶ 24-32 and 36-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's reliance on Indocin products to boost its net income was unsustainable given the risk of generic competition; (ii) the Spectrum Acquisition was less valuable than Assertio had represented to investors; (iii) accordingly, Assertio had overstated the positive impact the sale of Indocin products and the Spectrum Acquisition were likely to have on the Company's profitability; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## **The Truth Emerges**

39.     On November 8, 2023, Assertio issued a press release announcing the Company's Q3 2023 financial results. Among other results, Assertio reported Q3 non-GAAP earnings-per-share of $0.01, missing consensus estimates by $0.09, and revenue of $35.63 million, missing consensus estimates by $14.8 million. In addition, the press release stated, in relevant part:

"Our third quarter results were disappointing, with the loss of Indocin exclusivity and Rolvedon results below expectations driving significant charges to our net

13

income. While we are learning that certain aspects of the acquisition may not be everything we initially expected, we did not buy Spectrum just for the third quarter. The addition of Rolvedon diversifies and extends our portfolio's duration, plus brings improved commercial access and business-to-business contracting teams that are important to our strategic direction," said [Defendant] Peisert[.] "We have taken immediate steps to improve the business and remain committed to building a strategic path for Rolvedon's long-term sustainable growth."

"Despite these headwinds, Assertio's innovative non-personal platform continues to drive profitable growth on our other assets. Sympazan achieved another new monthly high on a 4% increase in total prescription volume quarter over quarter, and new payor coverage drove volumes and Net Product Sales for Otrexup up 4% and 6%, respectively, for the nine months year-to-date," said [Defendant] Peisert. "We have built this platform to scale and accommodate assets across a variety of therapeutic categories as we continue to pursue additional licensing and acquisition opportunities that can leverage these capabilities, bringing further value to Assertio and capitalizing on our existing liquidity."

40.     On this news, Assertio's stock price fell $0.92 per share, or 43.19%, to close at $1.21 per share on November 9, 2023.

41.     On January 3, 2024, Assertio issued a press release announcing that Defendant Peisert was stepping down from his role as the Company's CEO.

42.     On this news, Assertio's stock price fell $0.12 per share, or 10.96%, to close at $1.01 per share on January 4, 2024.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

44.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in

a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Assertio securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Assertio or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

48. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Assertio;

- whether the Individual Defendants caused Assertio to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Assertio securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

51. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

16

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Assertio securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Assertio securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

52. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Assertio securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Assertio securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

57.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Assertio securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Assertio's finances and business prospects.

58.     By virtue of their positions at Assertio, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Assertio, the Individual Defendants had knowledge of the details of Assertio's internal affairs.

60.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Assertio. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Assertio's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Assertio securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Assertio's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Assertio securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

61. During the Class Period, Assertio securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Assertio securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Assertio securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Assertio securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

62. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

64. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. During the Class Period, the Individual Defendants participated in the operation and management of Assertio, and conducted and participated, directly and indirectly, in the conduct of Assertio's business affairs. Because of their senior positions, they knew the adverse non-public information about Assertio's misstatement of income and expenses and false financial statements.

66. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Assertio's financial condition and results of operations, and to correct promptly any public statements issued by Assertio which had become materially false or misleading.

67. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Assertio disseminated in the marketplace during the Class Period concerning Assertio's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Assertio to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Assertio within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Assertio securities.

68. Each of the Individual Defendants, therefore, acted as a controlling person of Assertio. By reason of their senior management positions and/or being directors of Assertio, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Assertio to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Assertio and possessed the

power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Assertio.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: January 5, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*