**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| PERRY SHAPIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSERTIO HOLDINGS, INC., DAN PEISERT, and PAUL SCHWICHTENBERG,<br><br>Defendants. | Case No. 1:24-cv-00169<br><br>District Judge Franklin U. Valderrama |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION OF FLY RY ADVENTURES, LLC FOR RECONSIDERATION OF THE
COURT'S ORDER APPOINTING CONTINENTAL GENERAL INSURANCE
COMPANY AS LEAD PLAINTIFF**

Lead Plaintiff Movant Fly Ry Adventures respectfully submits this Memorandum of Law in support of its motion for reconsideration of the Court's April 11, 2024 order appointing Continental General Insurance Company ("Continental General") as Lead Plaintiff (ECF No. 61, the "Order").[1]

## I.      INTRODUCTION

The PSLRA requires courts to appoint as lead plaintiff the movant asserting the largest financial interest in the litigation who ***also*** satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ***and*** is not subject to unique defenses.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 WL 3934243, at *2-3 (N.D. Ill. July 30, 2013) (describing the PSLRA's lead plaintiff selection process).  As recognized in the Order, the PSLRA expressly provides that "a member of the purported class [may] establish[] that the 'presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'"  Order at 5.

In appointing Continental General as Lead Plaintiff—without the benefit of the adversarial process contemplated by the PSLRA—the Court did not have the benefit of a full factual record or legal analysis establishing that Continental General is subject to unique defenses that render Continental General legally incapable of adequately representing the class.  As discussed below, the Order incorrectly states that Continental General "has met the typicality requirement" and that "[t]here is no evidence before the Court suggesting that Continental General's interests are in conflict with those of the purported class."  Order at 9-10.  Fly Ry Adventures and the competing

---

[1]      Unless otherwise noted, all emphases are added, all internal citations and quotation marks are omitted, and all capitalized but undefined terms have the meanings ascribed in Fly Ry Adventures's opening brief (ECF No. 21).

movants were not afforded the opportunity to submit opposition briefs presenting "rebuttal evidence"—as contemplated by the PSLRA, *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)—establishing Continental General's atypicality and inadequacy based on the trading records Continental General had submitted with its motion. As such, reconsideration is warranted under the "manifest error" standard.

While Continental General claims to have suffered larger losses than Fly Ry Adventures, Continental General is beset by disqualifying defects that render it atypical and inadequate, and require that its motion be rejected. As set forth in Continental General's motion, the initial complaint (which was filed by Continental General's proposed lead counsel) alleges that Defendants violated the federal securities laws by failing to disclose **two distinct issues**: (1) that "the Company's reliance on Indocin products to boost its net income was unsustainable given the risk of generic competition"—which was first revealed on August 3, 2023; and (2) that the Company's July 2023 acquisition of Spectrum Pharmaceuticals, Inc. (the "Spectrum Acquisition") "was less valuable than Assertio had represented to investors"—which was first revealed on November 8, 2023. ECF No. 31 at 2-4; *see also* ECF No. 1, ¶¶ 3-8. Because Continental General sold all of its Assertio common stock by October 16, 2023 (before any corrective disclosures relating to the Spectrum Acquisition), *see* ECF No. 33-3, Continental General does not have standing to pursue both distinct theories and therefore cannot represent the entire class. Specifically, Continental General "has no incentive to fairly and adequately protect the interests of the class as to later disclosures" regarding the Spectrum Acquisition on November 8, 2023, and must be disqualified. *Navistar*, 2013 WL 3934243, at *5; *see also, e.g.*, *Doshi v. Gen. Cable*, No. 2:17-025 (WOB-CJS), 2017 WL 5178673, at *4 (E.D. Ky. Nov. 7, 2017) (disqualifying movant

that sold its stock before the end of the class period and "would have no incentive to pursue the claims based on that subsequent disclosure").

Not only does Continental General lack standing to pursue claims in connection with the Spectrum Acquisition, the appointment of Continental General as Lead Plaintiff jeopardizes the entire class's claims. For example, should the Court later find that the August 2023 disclosure regarding generic competition to Assertio's Indocin products is not actionable, the class would be left without a representative plaintiff with standing to pursue *any* claim—risking the dismissal of the entire case or requiring the Court to reopen the lead plaintiff selection process. *See, e.g.*, *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) (disqualifying movant because, "if the district court later finds that the [earlier] announcement . . . does not constitute a disclosure of fraud, none of the [movant's] losses would qualify as proximately linked to the alleged fraud in this case"); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses"). In contrast, Fly Ry Adventures held a significant amount of Assertio common stock through the end of the Class Period and, as a result, "has a great incentive to vigorously litigate *all material issues in this case*." *Navistar*, 2013 WL 3934243, at *5; *see also Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) ("this Court sees no reason to subject the class to this potential defense where there is another movant [that is not subject to the unique trading defenses]").

With Continental General eliminated from consideration, no other movant claims a larger loss than Fly Ry Adventures and that it is the *only* movant entitled to appointment as Lead Plaintiff under the PSLRA. *See infra* Sections II.C-D. Accordingly, Fly Ry Adventures respectfully

requests that its motion for reconsideration be granted and that Fly Ry Adventures be appointed as Lead Plaintiff and its selection of Kessler Topaz as Lead Counsel be approved.

## II.     ARGUMENT

### A.  Reconsideration Is Warranted

"Reconsideration is appropriate for 'correcting manifest errors of law or fact, or for presenting newly discovered evidence.'" *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, Nos. 22 C 71, *et al.*, 2023 WL 8527415, at *4 (N.D. Ill. Dec. 8, 2023). "A manifest error of law or fact under this standard occurs 'when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.'" *Hendricks v. Lauber*, No. 16 C 627, 2017 WL 4899301, at *1 (N.D. Ill. Oct. 24, 2017); *see also Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 912 (N.D. Ill. 2015) ("A manifest error of law or fact under this standard occurs when a district court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'").

Here, Continental General's appointment is based on an incomplete record and before other movants were allowed to "present evidence that disputes [Continental General's] prima facie showing of typicality and adequacy." *Cavanaugh v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 306 F.3d 726, 730 (9th Cir. 2002). Omission of this information is contrary to the PSLRA which expressly contemplates an "adversarial" process to tests the qualifications of a movant claiming to be the presumptively most adequate plaintiff. *Id.*; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (setting forth the PSLRA's adversarial process). Indeed, while the Order notes that there was "no opposition from the other movants," Order at 9, no briefing schedule for opposition briefs had been set pursuant to the Court's Case Procedures after the Court vacated its prior order referring

4

resolution of this matter to the Honorable Keri L. Holleb Hotaling. *See* Case Procedures of the Honorable Franklin U. Valderrama, Memorandum of Law Requirements ("Briefing schedules are generally set by Court order."); ECF No. 41 (minute entry striking its referral of the motions for appointment to the Honorable Keri L. Holleb Hotaling). Accordingly, the Court's conclusion that Continental General was entitled to appointment as Lead Plaintiff constitutes manifest error and meets the standard for reconsideration.

### B. The PSLRA's Statutory Standard

Once reconsideration is granted, Continental General's motion should be evaluated by the step-by-step process required by the PSLRA. Under the "straightforward" and "sequential" selection process mandated by the PSLRA, a movant's financial interest is only the starting point when evaluating a lead plaintiff movant, as the movant must also "satisf[y] the typicality and adequacy requirements [before] he is entitled to lead plaintiff status." *Cavanaugh.*, 306 F.3d at 732; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). Critically, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264. Thus, "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730. Fly Ry Adventures is the only movant that meets every element for appointment under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

5

### C.   Continental General Sold All of Its Shares before the End of the Class Period and Cannot Satisfy the PSLRA's Requirements for Appointment

Continental General cannot satisfy the PSLRA's adequacy and typicality requirements for appointment as Lead Plaintiff because it sold *all* of its Assertio common stock before the end of the Class Period and, as a result, has "no incentive" to pursue half of the claims in this litigation. *Navistar*, 2013 WL 3934243, at *5 (rejecting movant that sold all of its stock before the end of the class period because the movant had "no incentive" to pursue claims in connection with later disclosures); *Gen. Cable*, 2017 WL 5178673, at *4 (same).

The initial complaint, which was filed by Continental General's proposed lead counsel (Pomerantz LLP), alleges two separate theories of liability under the federal securities laws. *See* ECF No. 1.

*First,* the complaint alleges that Defendants concealed the fact that "the Company's reliance on Indocin products to boost its net income was unsustainable given the risk of generic competition." *Id.*, ¶ 4. According to the complaint, the truth about the Company's reliance on Indocin products was first revealed on August 3, 2023, when the U.S. Food and Drug Administration granted approval to a generic competitor to Assertio's Indocin products. *Id.*, ¶¶ 5-6. *Second*, the complaint alleges a completely distinct theory of liability based on Defendants concealing that "the Spectrum Acquisition was less valuable than Assertio had represented to investors." *Id.*, ¶ 4. The complaint alleges that the truth about the value of the Spectrum Acquisition was first revealed on November 8, 2023, when Assertio reported disappointing third quarter 2023 financial results due, in part, to "Rolvedon [a drug acquired through the Spectrum Acquisition] results below expectations" and Defendants admitted that the Spectrum Acquisition "may not be everything we initially expected." *Id.*, ¶¶ 7-8. Continental General expressly adopted these allegations in its motion. *See* ECF No. 31 at 2-4 (summarizing allegations of the complaint).

As set forth in Continental General's certification and loss chart, Continental General held 851,037 shares of Assertio common stock before the start of the Class Period, purchased 2,886,751 shares during the Class Period, and then sold *all* of these shares by October 16, 2023. *See* ECF Nos. 33-1 & 33-3. As a result, Continental General held *no* Assertio common stock when the truth about the Spectrum Acquisition was revealed at the end of the Class Period on November 8, 2023, cannot establish loss causation in connection with the Spectrum Acquisition-related claims, and can recover losses only in connection with the Indocin-related disclosures on August 3, 2023. *See* ECF No. 1, ¶¶ 5-8. In *Dura Pharmaceuticals, Inc. v. Broudo*, the Supreme Court held that an investor cannot establish loss causation under Section 10(b) if "the purchaser sells the shares quickly before the relevant truth begins to leak out." 544 U.S. 336, 342 (2005); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014) ("class members who sold their [company] common stock before . . . the first corrective price decline, cannot be said to have suffered economic loss caused by [the company's] alleged fraud"). Thus, it is black letter law that Continental General cannot establish loss causation in connection with the November 8, 2023 disclosure.

Given that all of Continental General's "damages are premised solely on the damages caused by the" August 3, 2023 revelations regarding the unsustainability of Indocin revenues, Continental General "has no interest in devoting resources pursuing claims based upon the" Spectrum Acquisition, which were revealed on November 8, 2023. *Navistar*, 2013 WL 3934243, at *5. As such, Continental General "has no incentive to fairly and adequately protect the interests of the class as to later disclosures" and "would be unable to satisfy the Rule 23 requirements necessary for a lead [p]laintiff." *Id.*; *see also Gen. Cable*, 2017 WL 5178673, at *4 (concluding that a movant with the largest financial interest was "not an appropriate lead plaintiff" because it

7

sold all of its stock after a partial disclosure and "would have no incentive to pursue the claims based on th[e] subsequent disclosure"). Indeed, Continental General's trading pattern strongly suggests that Continental General's "primary interest" will be to focus on the Indocin-related claims to the detriment of the Spectrum Acquisition-related claims. *Navistar*, 2013 WL 3934243, at *5.

Any argument by Continental General that it is not atypical because it has standing to bring claims in connection with one of the two theories in this case is of no moment. As explained by the Honorable Samuel Der-Yeghiayan in *Navistar*, a movant like Continental General will "face a unique defense unlike most other Plaintiffs" because it "may face a motion to dismiss based on a lack of standing since [it] admittedly suffered no injury related to the" November 8, 2023 revelations regarding the Spectrum Acquisition. 2013 WL 3934243, at *5; *see also Gen. Cable*, 2017 WL 5178673, at *4 (observing that, "because [the movant] can show no loss causation as to the [later] disclosure, it would be subject to a standing defense"); *Pardi v. Tricida, Inc.*, No. 21-CV-00076-LHK, 2021 WL 1381271, at *1 (N.D Cal. Apr. 2, 2021) (finding movant who sold after a partial disclosure, but before the end of the class period, to be "an atypical plaintiff" that is exposed "to the unique defense that [she] cannot prove loss causation") (alteration in original). This risk is particularly problematic give that, "if the district court later finds that the [August 3, 2023 revelations] does not constitute a disclosure of fraud, none of [Continental General's] losses would qualify as proximately linked to the alleged fraud in this case" and the entire case would be dismissed for lack of standing. *FalconStor*, 277 F.R.D. at 240 (rejecting movant because "the Court is concerned that if the [movant], as lead plaintiff, is unable to prove loss causation and is found to lack standing, the entire case could be dismissed"); *see also, e.g.*, *In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 920 (E.D. Mich. 2005) (granting summary judgment for defendants

8

where the lead plaintiff sold its securities prior to the date the alleged fraud was found to have been revealed to the public and denying motion to intervene filed by class member who held its securities through the disclosure).

Such a result could force the Court to reopen the lead plaintiff selection process—injecting unnecessary inefficiency later in this litigation. *See, e.g.*, *IMAX*, 272 F.R.D. at 155, 160 (denying class certification, rejecting lead plaintiff as proposed class representative, and reopening the lead plaintiff selection process where the previously appointed lead plaintiff "cannot establish loss causation—and, at a minimum, is subject to unique defenses which may threaten to become the focus of the litigation"). Worse yet, dismissal of the class action or denial of class certification could leave absent class members without any ability to bring individual claims if either occurs after the expiration of the statute of repose period runs. *See, e.g.*, *Lundy v. Ideanomics, Inc.*, No. 20 Civ. 4944 (GBD), 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (rejecting movant with unique trading defenses and noting that, "if Defendants are later successful in any opposition to class certification or [the movant] as the class representative as a result of [the movant's] unique defense, class members may be subject to statute of repose concerns"); *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 515 (2017) (holding that statutes of repose are not subject to equitable tolling during the pendency of class action litigation).

The risks associated with Continental General's appointment are both unnecessary and entirely avoidable given that Fly Ry Adventures, unlike Continental General, held a significant amount of Assertio common stock through the end of the Class Period and "has a great incentive to vigorously litigate ***all material issues in this case***." *Navistar*, 2013 WL 3934243, at *5; *see also Longtop*, 2011 WL 4597553, at *8 ("this Court sees no reason to subject the class to this potential defense where there is another movant [that is not subject to the unique trading

9

defenses]"); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128(NRB), 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) ("There seems little reason for us to subject the class members to such a risk [associated with the movant's unique defenses]."); *In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC, *et al.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (explaining that competing movants need only show "a degree of likelihood that a unique defense might play a significant role at trial"). At a minimum, the class's interests in pursuing claims in connection with the Spectrum Acquisition should be protected by the appointment of Fly Ry Adventures as Co-Lead Plaintiff. *See, e.g.*, *Twitchell v. Enovix Corp.*, Nos. 23-cv-0071-SI, *et al.*, 2023 WL 3170044, at *8 (N.D. Cal. Apr. 28, 2023) ("the Court finds it would be prudent here to appoint a co-lead plaintiff who held [the company's] stock through the second disclosure"); *Lusk v. Life Time Fitness, Inc.*, No. 15-1911 JRT/JJK, 2015 WL 9858177, at *2 (D. Minn. July 10, 2015) (appointing co-lead plaintiffs where doing so "would best protect the [class's] interests" given the one movant's "possible conflict of interest defense").

Moreover, recent cases appointing movants that sold before the end of the class period are distinguishable given that they—unlike this litigation—involved a single theory of fraud in which partial disclosures led to the "progressive revelation" of the fraud. *See, e.g.*, *Christian v. BT Grp. PLC*, No. 2:17-cv-00497-KM-JBC, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (finding no unique defense where "the allegations present a fairly straightforward (and not atypical) case of progressive revelation of a problem that turned out to be more serious than first believed"); *Enovix*, 2023 WL 3170044, at *6 (finding no unique defense "where the [movant] held stock through the first of two *related* disclosures").

    **D.**     **Fly Ry Adventures Satisfies the PSLRA's Requirements and Is Entitled to Appointment as Lead Plaintiff**

With Continental General removed from consideration, Fly Ry Adventures is the only movant capable of satisfying the PSLRA's largest financial interest, adequacy, and typicality requirements.

With losses of approximately $356,679 in connection with its Class Period purchases of Assertio common stock under the preferred LIFO methodology, *see* ECF No. 22-2, Fly Ry Adventures suffered the largest losses of the remaining movants:

| MOVANT | CLAIMED LOSSES (LIFO)[2] |
|---|---|
| **Fly Ry Adventures** | **$356,679** |
| University of Puerto Rico Retirement System | $306,389 |
| Ron Yancey | $108,901 |
| ~~Khuong K. Luong~~ [Non-opposition at ECF No. 35] | ~~$54,279~~ |
| ~~Neal Serra~~ [Non-opposition at ECF No. 39] | ~~$27,859~~ |
| ~~Victor de Moraes~~ [Non-opposition at ECF No. 42] | ~~$23,313~~ |

In addition to possessing the largest LIFO losses, the most important measure of financial interest, Fly Ry Adventures also possesses the largest financial interest of the remaining movants

---

[2]     LIFO is the preferred and most widely accepted methodology for calculating movants' financial interests. *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("[T]he overwhelming trend . . . nationwide has been to use LIFO[.]"). Competing movants' losses are taken from their respective filings. *See* ECF Nos. 11-3, 15-2, 18-4, 26-3, & 34-3.

under the three secondary metrics commonly used by courts to determine a movant's financial interest under the PSLRA. *See, e.g.*, *Lax v. First Merchs. Acceptance Corp.*, Nos. 97 C 2715, *et al.*, 1997 WL 461036, at \*5 (N.D. Ill. Aug. 11, 1997) (detailing four financial interest metrics). Specifically, Fly Ry Adventures purchased the most total shares during the Class Period, purchased the most net shares during the Class Period, and expended the most net funds during the Class Period:

| Movant | Total Shares Purchased | Net Shares Purchased | Net Expenditures |
|---|---|---|---|
| **Fly Ry Adventures** | **89,000** | **89,000** | **$456,270.29** |
| University of Puerto Rico Retirement System | 75,900 | 70,500 | $388,668.46 |
| Ron Yancey | 33,376 | 33,376 | $143,261.76 |
| ~~Khuong K. Luong~~ [Non-opposition at ECF No. 35] | ~~9,000~~ | ~~0~~ | ~~($5,540.00)~~ |
| ~~Neal Serra~~ [Non-opposition at ECF No. 39] | ~~14,500~~ | ~~14,500~~ | ~~$42,731.57~~ |
| ~~Victor de Moraes~~ [Non-opposition at EXF No. 42] | ~~25,733~~ | ~~0~~ | ~~$23,313.40~~ |

In addition to possessing the largest financial interest of the remaining movants, Fly Ry Adventures, as demonstrated in its opening brief and accompanying declaration, *see* ECF Nos. 21 & 22-3, readily meets the applicable adequacy and typicality requirements under Rule 23. Indeed, Fly Ry Adventures has affirmatively demonstrated its commitment and ability to zealously

prosecute this litigation for the benefit of the class—including selecting experienced counsel that recovered $450 million for investors in this District in *In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-1339 (JLA) (N.D. Ill.)—and is not subject to any unique defenses. Because there is no "proof" undermining Fly Ry Adventures's typicality and adequacy, Fly Ry Adventures should be appointed as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption).

### E. The Remaining Motions Should Be Denied

Given that Fly Ry Adventures has satisfied all the PSLRA's requirements for appointment as Lead Plaintiff, and each of the remaining movants asserts a smaller financial interest, *see supra* Section II.D., the Court need not even consider the other competing lead plaintiff motions. *See Cavanaugh*, 306 F.3d at 732 (stating that the movant with the largest losses satisfying the typicality and adequacy requirements "is entitled to lead plaintiff status").

## III. CONCLUSION

For these reasons, Fly Ry Adventures respectfully requests that: (1) its motion for reconsideration be granted; and (2) upon reconsideration, Fly Ry Adventures be appointed as Lead Plaintiff and its selection of Kessler Topaz as Lead Counsel be approved.

Dated: April 12, 2024

Respectfully submitted,

**KESSLER TOPAZ MELTZER
& CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul (#90751)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com

*Counsel for Fly Ry Adventures, LLC and Proposed Lead Counsel for the Class*

13