UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PERRY SHAPIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSERTIO HOLDINGS, INC., DAN PEISERT, and PAUL SCHWICHTENBERG,<br><br>Defendants. | Civil Action No. 1:24-cv-00169<br><br><br>CLASS ACTION<br><br><br>Hon. Franklin U. Valderrama |

**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION OF FLY RY ADVENTURES LLC
FOR RECONSIDERATION OF THE COURT'S ORDER APPOINTING
CONTINTENTAL GENERAL INSURANCE COMPANY AS LEAD PLAINTIFF**

Lead Plaintiff the Continental General Insurance Company ("CGIC")[1] respectfully submits this Memorandum of Law in Opposition to the motion of Fly Ry Adventures LLC ("FRA") for reconsideration of the Court's Order appointing CGIC as Lead Plaintiff of the Class in the above-referenced action (respectively, the "Reconsideration Motion" (Dkt. No. 62), the "Lead Plaintiff Order" (Dkt. No. 61), and the "Action").

## PRELIMINARY STATEMENT

FRA's Reconsideration Motion is doubly flawed. *First*, it fails to meet the standard for reconsideration, which only "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Zurich Cap. Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (quoting *Publishers Res. Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985)). Here, FRA has not identified a single error of law or fact in the Lead Plaintiff Order, nor adduced any newly discovered evidence. Rather, it merely claims that reconsideration is merited because the Court entered the Lead Plaintiff Order without opposition briefs and thus supposedly lacked the "benefit of a full factual record or legal analysis" in adjudicating the competing Lead Plaintiff Motions. Dkt. No. 63 at 1. Yet the crux of FRA's Reconsideration motion is that the initial Complaint in this Action alleged misrepresentations and/or omissions concerning two purportedly distinct issues—(1) the unsustainability of the Company's reliance on Indocin products; and (2) that the Company's July 2023 acquisition of Spectrum Pharmaceuticals, Inc. (the "Spectrum Acquisition") was less valuable than the Company had represented—and that CGIC, by virtue of the timing of its sales of Assertio stock during the Class Period, "does not have standing to pursue both distinct theories [of fraud] and therefore

---

[1] All capitalized terms herein are defined in CGIC's moving brief, unless otherwise indicated. *See* Dkt. No. 31.

1

cannot adequately represent the entire class." Dkt. No. 63 at 2. However, *all* of the salient facts—the specific fraud allegations in this Action and the timing of CGIC's stock sales—have been in the record since the parties filed their initial Lead Plaintiff motions. Likewise, the competing movants both filed motion briefs stating the relevant legal standard for the appointment of a Lead Plaintiff under the PSLRA. *See generally* Dkt. Nos. 21, 31. The Court, having reviewed the salient facts and law as stated in the competing moving briefs, simply did not reach FRA's preferred conclusion. This does *not* constitute an error of law.

*Second*, there is in any event no merit to the legal arguments that FRA claims the Court ought to have considered. Again, FRA claims that there are two distinct theories of fraud in this litigation, that the two distinct frauds were revealed via two distinct separate disclosures, and that because CGIC sold all of its shares of Assertio stock after the initial disclosure of the Indocin-related fraud in August 2023 (the "August Disclosure"), but prior to the disclosure of the ostensibly distinct fraud relating the Spectrum Acquisition in November 2023 (the "November Disclosure"), CGIC cannot adequately represent the interests of the entire Class. Dkt. No. 63 at 2.

Yet FRA's framing of the issues creates a false dichotomy. What FRA characterizes as two "distinct theories" of fraud in fact comprise a single theory—namely, that during the Class Period, Assertio and its officers consistently misled investors with respect to the sustainability of the Company's revenues. The Company's representations regarding Indocin products and the profitability of the Spectrum Acquisition were thus both part and parcel of the same overarching fraud pertaining to the Company's revenues. Indeed, the Complaint alleges that the Defendants' Class Period statements, made in the same SEC filings, press releases, and earnings calls, were false and/or misleading with respect to *both* issues—that is, the allegations in the Complaint are consistent with a *single* fraudulent scheme. Moreover, there is in any event no requirement that

a Lead Plaintiff held shares through all alleged corrective disclosures to be adequate to represent an investor Class. *See*, *e.g.*, *Mortimer v. Diplomat Pharmacy, Inc.,* No. 19 C 1735, 2019 WL 3252221, at *4 (N.D. Ill. July 19, 2019) (appointing as lead plaintiff movant that sold all of its shares after the first of three alleged corrective disclosures); *Juliar v. SunOpta, Inc.*, No. 08 Civ. 933 (PAC), 2009 U.S. Dist. LEXIS 58118, at *7-8 (S.D.N.Y. Jan. 30, 2009) (appointing investor who sold shares after partial disclosure as lead plaintiff). In short, even if the Court had allowed FRA to file an opposition brief, it would not have changed the outcome, because FRA's opposition argument is wrong.

In its Lead Plaintiff Order, the Court reached the correct legal conclusion. CGIC—not FRA—satisfies the PSLRA's criteria for appointment as Lead Plaintiff: CGIC has the largest financial interest in the relief sought by the Class in this litigation, and its motion papers *prima facie* demonstrate that it satisfies the adequacy and typicality requirements of Rule 23. *See* Dkt. No. 31 at 6-9. As such, CGIC's motion papers demonstrated that it met the statutory criteria to be entitled to the PSLRA's "most adequate plaintiff" presumption. That presumption can only be rebutted by proof, adduced by another movant, that CGIC "will not fairly or adequately represent the interests of the class" or is subject to disqualifying unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No movant has adduced such proof. The Court's Lead Plaintiff Order thus applied the appropriate legal standard to the salient facts and reached the correct conclusion.

Accordingly, for the reasons stated herein and in the memorandum of law in support of CGIC's motion, CGIC respectfully submits that the Court should deny FRA's Reconsideration Motion.

## ARGUMENT

### I.      FRA Has Not Met the Standard for Reconsideration

FRA's Reconsideration Motion fails at the outset because it has not met the relevant legal

3

standard. Motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Zurich Cap.*, 383 F. Supp. at 1041 (quoting *Publishers Res. Inc.*, 762 F.2d at 561). As the Seventh Circuit has cautioned, appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). This is because court orders are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).

Here, FRA has not identified a single error of law or fact in the Lead Plaintiff Order, nor presented any newly discovered evidence. Rather, as discussed in greater detail *infra*, FRA's Reconsideration Motion addresses **only** facts that were in the record when the Court issued the Lead Plaintiff Order—namely, (1) the fraud allegations in the Complaint (*see generally* Dkt. No. 1), and (2) the timing of CGIC's Class Period sales of Assertio stock, which was fully disclosed in CGIC's motion papers. *See* Dkt. Nos. 68 at 2; 33-3. Likewise, both parties correctly cited the relevant legal standard for appointment as Lead Plaintiff pursuant to the PSLRA: "the court shall adopt a presumption that the most adequate plaintiff . . . is the [movant or plaintiff] that . . . has the largest financial interest in the relief sought by the class[] and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See also* Dkt. No. 31 at 5 (CGIC citing the PSLRA's Lead Plaintiff appointment criteria), Dkt. No. 21 at 5 (FRA citing the PSLRA's Lead Plaintiff appointment criteria).

The Court's Lead Plaintiff Order thus took into account all of the salient facts and applied the appropriate legal standard. FRA has not identified, nor can it identify, any specific error or

4

oversight by the Court. Rather, FRA's argument is essentially that the Court did not reach FRA's preferred conclusion with respect to the appointment of a Lead Plaintiff in this Action. This quite obviously is **not** the standard for reconsideration. *See*, *e.g.*, *Quaker Alloy Casting*, 123 F.R.D. at 288 (court orders are not "subject to revision and reconsideration at a litigant's pleasure").

## II.    FRA's Argument Against CGIC's Appointment Is Not Meritorious

Moreover, even if the Court had permitted FRA to file an opposition brief challenging CGIC's appointment as Lead Plaintiff, it would not have changed the outcome, for the simple reason that FRA's arguments against CGIC's appointment lack merit.

FRA claims that the Defendants in this Action:

> violated the federal securities laws by failing to disclose two distinct issues: (1) that "the Company's reliance on Indocin products to boost its net income was unsustainable given the risk of generic competition"—which was first revealed on August 3, 2023; and (2) that the Company's July 2023 acquisition of Spectrum Pharmaceuticals, Inc. (the "Spectrum Acquisition") "was less valuable than Assertio had represented to investors"—which was first revealed on November 8, 2023.

Dkt. No. 63 at 2. As FRA tells it, the Defendants' two-fold fraud was disclosed to the market via two unrelated disclosures: (1) the corrective disclosure of August 3, 2023, which purportedly laid bare the Indocin-related fraud; and (2) the corrective disclosure of November 8, 2023, which disclosed the supposedly distinct fraud relating to the Spectrum Acquisition.

Yet a holistic assessment of the Complaint and the fraud allegations alleged therein make clear that FRA's framing of the issues posits a false dichotomy. The allegations relating to the Company's reliance on Indocin products and the allegations relating to the profitability of the Spectrum Acquisition are quite plainly part and parcel of the same overarching theory of fraud— namely, that Assertio and its officers misled investors regarding the sustainability of the Company's revenues. Indeed, the November Disclosure included announcements related to both Assertio's Indocin products **and** the Spectrum Acquisition, further underscoring the extent to

which these issues are related. Indeed, the Complaint alleges that the Defendants' Class Period statements—which were variously made in the same SEC filings, press release, and/or earnings calls—were false and/or misleading because of *both* issues. *See* Dkt. No. 1 ¶¶ 24-38. The Complaint thus alleges a *single* fraudulent scheme by Defendants, and it makes no sense to balkanize the Class's fraud claims as FRA now urges.

Specifically, because Assertio did not possess any patents covering Indocin, the Company faced the constant threat that a rival pharmaceutical manufacturer would introduce a competing generic version of the product, making Assertio's reliance on Indocin products to boost its net income unsustainable. Dkt. No. 1 ¶¶ 1-4. As a result, the Company entered into the Spectrum Acquisition, in large part, to "expand and diversify [its] revenue base." *Id.* ¶ 32. In fact, in the April 25, 2023 press release announcing the acquisition, Assertio listed "Platform Diversification" as a "strategic and financial rationale" for the transaction, stating that "*[i]n addition to Assertio's key assets Indocin*, Sympazan and Otrexup, *Spectrum's key asset ROLVEDON will represent meaningful further asset diversification*." *Id.* ¶ 28 (emphasis added). As such, the Company's entering into Spectrum Acquisition is plausibly related to the allegations of the unsustainability of continuing revenues from its Indocin products.

Investors began to learn the truth just four months later when, on August 3, 2023, Assertio announced in a press release that it was withdrawing its 2023 financial outlook to assess the FDA's decision to grant approval to manufacture and market a competing generic version of Indocin—the very risk that caused Assertio to enter into the Spectrum Acquisition in the first place. *Id.* ¶ 34. However, in that same press release, Assertio reaffirmed that the Spectrum Acquisition would strengthen the Company's profitability by diversifying its revenue base. *Id.* ¶¶ 36-37. Then, on November 8, 2023, despite its prior representations regarding the purported benefits of the

Spectrum Acquisition, the Company reported Q3 earnings and revenue figures that missed consensus estimates. *Id.* ¶ 39. These disappointing results, Assertio explained, were caused primarily by "***the loss of Indocin exclusivity***," "***Rolvedon results below expectations driving significant charges to [its] net income***," *and* "***certain aspects of the [Spectrum Acquisition not being] everything the Company initially expected***." *Id.* (emphasis added). As such, these two revelations each illustrated the extent to which Assertio and its officers misled investors regarding the sustainability of the Company's revenues. Moreover, the fact that both the Spectrum Acquisition and loss of exclusivity from the Indocin products were referenced in the November 8, 2023 corrective disclosure demonstrates that these "two theories" of fraud are in fact inextricably intertwined rendering any attempt to balkanize these cases futile.

Indeed, it is unclear how FRA, under its bifurcated framing of the issues, would disentangle "Indocin-fraud" losses from "Spectrum Acquisition-fraud" losses in assessing the damages of investors who held shares through the November Disclosure. Under an appropriately holistic view of the fraud allegations, there is of course no need to do so, as the losses of *all* Class members in this Action were caused by the Defendants' alleged fraud regarding the sustainability of Assertio's revenues.

According to FRA's position, then, the Court should appoint two lead plaintiffs: (1) CGIS, as Lead Plaintiff of a Class of "Indocin-fraud" investors, and (2) FRA, as Lead Plaintiff of a Class of "Spectrum Acquisition-fraud" investors. The PSLRA obviously does not countenance such an outcome. Likewise, the PSLRA-mandated notice of pendency of this litigation advised Assertio investors of their right to seek "appoint[ment] . . . as Lead Plaintiff for *the* class", consisting of "*all* persons and entities other than Defendants that purchased or otherwise acquired Assertio securities between March 9, 2023 and November 8, 2023" (*see* Dkt. No. 33-2 at *2 (emphases

7

added))—that is, a *single* class of Assertio investors defrauded during the Class Period. If FRA truly considered the two sets of claims to be distinct from one another, it should have filed its own Complaint making such distinction and published a notice of pendency advising investors of the need for two separate Lead Plaintiff applications. Yet FRA did not do so. Nor did FRA draw such a distinction in its motion papers. It *expressly* sought appointment as a sole Lead Plaintiff on behalf of *all* Class members. Likewise, in discussing its financial interest and its adequacy and typicality under Rule 23 in its motion brief, FRA did not differentiate between purportedly different theories of fraud. *See generally* Dkt. No. 21. Rather, it adopted *in full* the allegations of the Complaint without making such a distinction. *Id.* at 3-5. Indeed, FRA never drew *any* distinction between "Indocin-fraud" and "Spectrum Acquisition-fraud" claims until it filed its Reconsideration Motion—*i.e.*, until it belatedly perceived some advantage to doing so.

Moreover, when a securities class action complaint alleges multiple corrective disclosures, there is no requirement that an investor have incurred losses in connection with all of the corrective disclosures in order to be adequate and typical under Rule 23. *See*, *e.g.*, *Mortimer,* 2019 WL 3252221 at *4 (appointing as lead plaintiff movant that sold all of its shares after the first of three alleged corrective disclosures); *SunOpta*, 2009 U.S. Dist. LEXIS 58118 at *7-8 (appointing investor who sold shares after partial disclosure as lead plaintiff); *Kusen v. Herbert*, No. 23-cv-02940-AMO, 2023 WL 8171736, at *8 (N.D. Cal. Nov. 24, 2023) (same). *See also In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *10 (N.D. Ill. Nov. 15, 2019) ("Nor is it necessary 'that a different lead plaintiff be appointed to bring every single available claim, as such a requirement would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole.'"). The fact that CGIC only held shares through the August

Disclosure and sold its shares before the November Disclosure thus has no bearing on its adequacy or typicality as a Class representative under Rule 23, nor otherwise subjects CGIC to disqualifying unique defenses.

As Lead Plaintiff, CGIC intends to prosecute an expansive and coherent theory of the fraud claims against the Defendants, rather than placing the claims on two separate tracks (as FRA evidently considers appropriate). Further, as Lead Plaintiff, CGIC will obviously be incentivized to pursue theories of fraud and damages that take into account every colorable corrective disclosure and every investor damaged by the Defendants' alleged fraud, in order to maximize the total Class-wide damages and thus the settlement pressure on the Defendants. By contrast, FRA's apparent insistence on fracturing the Class's claims only calls into question its own fitness to serve as Lead Plaintiff.

## CONCLUSION

For the foregoing reasons, CGIC respectfully requests that the Court issue an Order denying FRA's Reconsideration Motion.

Dated: April 18, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

9

Facsimile: (312) 377-1184
lcludwig@pomlaw.com

*Counsel for Lead Plaintiff Movant Continental
General Insurance Company and Proposed Lead
Counsel for the Class*

DJS LAW GROUP LLP
David J. Schwartz
(*pro hac vice* application forthcoming)
274 White Plains Road, Suite 1
Eastchester, New York 10709
Telephone: (914) 206-9742
david@djslawllp.com

*Additional Counsel for Lead Plaintiff Movant
Continental General Insurance Company*