**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PERRY SHAPIRO, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-00169 |
| Plaintiff, | District Judge Franklin U. Valderrama |
| v. | |
| ASSERTIO HOLDINGS, INC., DAN PEISERT, and PAUL SCHWICHTENBERG, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THE MOTION OF FLY RY ADVENTURES, LLC FOR RECONSIDERATION OF THE**
**COURT'S ORDER APPOINTING CONTINENTAL GENERAL INSURANCE**
**COMPANY AS LEAD PLAINTIFF**

Lead Plaintiff Movant Fly Ry Adventures respectfully submits this Reply Memorandum of Law in further support of its motion for reconsideration (ECF No. 62) of the Court's April 11, 2024 Order (ECF No. 61).[1]

## I.  ARGUMENT

### A.  Reconsideration of the Order Is Warranted

An entire phase of the PSLRA's mandatory process for evaluating lead plaintiff movants, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), was omitted and highly material risks plaguing Continental General's ability to adequately represent the class were never addressed in the Order, yet Continental General argues that reconsideration is not warranted.  This is not the law.

As the Ninth Circuit explained in *Cavanaugh v. United States District Court for Northern District of California*, the PSLRA's lead plaintiff selection process is "adversarial and other plaintiffs may present evidence that disputes the [presumptive] lead plaintiff's prima facie showing of typicality and adequacy."  306 F.3d 726, 730 (9th Cir. 2002).  The adversarial process is intended to ensure that the class is protected by not having their claims led by a lead plaintiff whose unique issues prevent it from adequately advancing the interests of ***all*** class members.  *See Hedick v. Kraft Heinz Co.*, Nos. 19-cv-1339, *et al.*, 2019 WL 4958238, at *5 n.5 (N.D. Ill. Oct. 8, 2019) (Dow, Jr., J.) (rejecting movant claiming largest loss but who was ***potentially*** exposed to unique defenses without deciding the validity of the potential defenses).  Because the Order was decided without the assistance of opposition briefing, the Court did not "give other plaintiffs [like Fly Ry Adventures] an opportunity to rebut [Continental General]'s showing that it satisfies Rule 23's typicality and adequacy requirements" as required by the PSLRA.  *Cavanaugh*, 306 F.3d at 730,

---

[1]    Unless otherwise noted, all emphases are added, all internal citations and quotation marks are omitted, and all capitalized but undefined terms have the meanings ascribed in Fly Ry Adventures's lead plaintiff brief (ECF No. 21) and reconsideration brief (ECF No. 63).

732 (granting mandamus and vacating district court's lead plaintiff selection as having "depart[ed] from the statutory text" of the PSLRA). Indeed, Continental General previously recognized that the PSLRA contemplates an adversarial vetting process when it conceded that its motion "may be opposed by other lead plaintiff movants." ECF No. 30 at 1.

Moreover, while Continental General acknowledges that evidence of its disqualifying trading "ha[s] been in the record since the parties filed their initial Lead Plaintiff motions," ECF No. 67 at 2, the Order did not analyze whether the timing of Continental General's sales rendered Continental General inadequate, atypical, or otherwise subject to unique defenses that precluded its appointment as Lead Plaintiff. Relying solely on a movant's say-so regarding its adequacy—without permitting competing movants to present "[r]ebuttal evidence," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)—eliminates a critical protection for all class members, is contrary to the plain language of the PSLRA, and is grounds for reconsideration. *See, e.g.*, *Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 912 (N.D. Ill. 2015) ("A manifest error of law or fact under this standard occurs when a district court . . . has made an error not of reasoning but of apprehension."); *Hendricks v. Lauber*, No. 16 C 627, 2017 WL 4899301, at *1 (N.D. Ill. Oct. 24, 2017) (explaining that manifest error occurs "when the court overreaches by deciding an issue not properly before it").

### B. Fly Ry Adventures Is Entitled to Appointment as Lead Plaintiff Because Continental General Cannot Satisfy the PSLRA's Requirements

Continental General cannot satisfy the PSLRA's adequacy and typicality requirements because it lacks standing to pursue all claims in this litigation and "has no incentive to fairly and adequately protect the interests of the class" in connection with the November 2023 corrective disclosure regarding the Spectrum Acquisition. ECF No. 63 at 6-10; *see also, e.g.*, *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 WL 3934243, at *5 (N.D. Ill. July 30, 2013) (disqualifying movant that sold its stock before the end of the class period);

2

*Doshi v. Gen. Cable*, No. 2:17-025 (WOB-CJS), 2017 WL 5178673, at *4 (E.D. Ky. Nov. 7, 2017) (disqualifying movant that sold its stock before the end of the class period and "would have no incentive to pursue the claims based on that subsequent disclosure"); *Pardi v. Tricida, Inc*., No. 21-CV-00076-LHK, 2021 WL 1381271, at *1 (N.D Cal. Apr. 2, 2021) (finding movant who sold after a partial disclosure, but before the end of the class period, to be "an atypical plaintiff" that is exposed "to the unique defense that [she] cannot prove loss causation") (alteration in original). With Continental General unable to satisfy the requirements for appointment as Lead Plaintiff, Fly Ry Adventures is the only movant capable of satisfying the PSLRA's largest financial interest, adequacy, and typicality requirements, and is entitled to appointment as Lead Plaintiff.

Faced with the indisputable fact that it did not own any Assertio stock on November 8, 2023—when Defendants first admitted that the Spectrum Acquisition "may not be everything we initially expected" and reported "Rolvedon [a drug acquired through the Spectrum Acquisition] results below expectations," ECF No. 1, ¶ 7—Continental General spends much energy arguing that that the Indocin-related disclosures (beginning in August 2023) and the Spectrum Acquisition-related disclosures (beginning in November 2023) are "part and parcel of the same overarching fraud pertaining to the Company's revenues." ECF No. 67 at 2. That both sets of misrepresentations had the same *general* effect—i.e., misleading investors about the Company's financial prospects—misconstrues Fly Ry Adventures's arguments and cannot salvage Continental General's motion.

*First*, Continental General does not dispute that it cannot establish loss causation, and lacks standing to pursue claims, in connection with the November 8, 2023 corrective disclosures. As the Supreme Court explained in *Dura Pharmaceuticals, Inc. v. Broudo*, if a plaintiff "sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led

3

to any loss." 544 U.S. 336, 342 (2005). Accordingly, loss causation is established "by pleading facts that show when the truth regarding an alleged misstatement emerged—referred to as corrective disclosure—the price of the company's shares declined as a result." *Coll. Ret. Equities Fund v. Boeing Co.*, No. 22 CV 3845, 2023 WL 6065260, at *24 (N.D. Ill. Sept. 18, 2023). Thus, regardless of whether statements about Indocin and the Spectrum Acquisition were both part of Defendants' broader scheme to "misle[a]d investors with respect to the sustainability of the Company's revenues," ECF No. 67 at 2, a plaintiff cannot establish loss causation in connection with misrepresentations about the Spectrum Acquisition if it sold its shares before the truth about the Spectrum Acquisition emerged. *See Dura*, 544 U.S. at 342.

Courts routinely analyze lead plaintiff movants' ability to establish loss causation based on the ***allegations in the complaint*** and refuse to consider movants' alternative theories that "are entirely inconsistent with the [c]omplaint's allegations." *Jiang v. Chirico*, No. 23 Civ. 1258 (PGG), 2024 WL 967084, at *5-9 (S.D.N.Y. Mar. 5, 2024) (rejecting movant claiming largest financial interest due to its inability to establish loss causation and dismissing that movant's alternative loss causation arguments because its purported corrective disclosures "did not 'reveal the truth' – or begin to reveal the truth – about the alleged misrepresentations"). Here, Continental General suffered no losses in connection with any misrepresentations regarding the Spectrum Acquisition because it sold all of its Assertio stock, *see* ECF No. 33-3, before the truth about the Spectrum Acquisition was first revealed on November 8, 2023. *See* ECF No. 1, ¶ 7. Critically, the complaint does not allege that the August 2023 disclosures (the only disclosures occurring when Continental General owned Assertio stock) revealed that Defendants' statements about the profitability of the Spectrum Acquisition were false or misleading. In fact, Continental General admits that in August 2023 "Assertio announced . . . that it was withdrawing its 2023 financial

outlook to assess the FDA's decision to grant approval to manufacture and market a competing generic version of Indocin" (i.e., an Indocin-related *disclosure*) and also "reaffirmed that the Spectrum Acquisition would strengthen the Company's profitability by diversifying its revenue base" (i.e., a Spectrum-related *misrepresentation*). ECF No. 67 at 6; *see also* ECF No. 1, ¶¶ 5-6, 36-37. Moreover, despite Continental General's attempt to conflate the two sets of misrepresentations, Continental General fails to provide any explanation for how the Company's August 2023 admission that its guidance needed to be withdrawn due to the emergence of a generic competitor for the Company's Indocin products revealed anything about the profitability of the Spectrum Acquisition (and its Rolvedon drug). Accordingly, it cannot be disputed that Continental General's standing in this litigation is predicated *solely* on the Indocin-related disclosures in August 2023—and is not impacted by proving liability in connection with the Spectrum Acquisition-related disclosures in November 2023. Thus, Continental General has "no incentive to pursue the claims based on [the November 2023] disclosure" and is "not an appropriate lead plaintiff." *Gen. Cable*, 2017 WL 5178673, at *4; *see also Navistar*, 2013 WL 3934243, at *5.

*Second*, the fact that the sustainability of Indocin revenues and the profitability of the Spectrum Acquisition are both relevant to investors' assessment of the Company's financial prospects only further highlights Continental General's conflicted position. While Continental General claims that it is "incentivized to pursue theories of fraud and damages that take into account every colorable corrective disclosure and every investor damaged by the Defendants' alleged fraud," ECF No. 67 at 9, Continental General's inability to recover in connection with the November 2023 disclosures regarding the Spectrum Acquisition instead exposes the class to the substantial risk that Continental General's "primary interest" will be the success of the Indocin-related claims and that Continental General has "no interest in devoting resources pursuing claims

5

based upon the" Spectrum Acquisition-related disclosures on November 8, 2023. *Navistar*, 2013 WL 3934243, at *5.

This concern is magnified by Continental General's refusal to protect the class from its deficiencies. Specifically, Continental General's response to the motion for reconsideration ignores the reality that its appointment as Lead Plaintiff will require the addition of either a co-lead plaintiff or an additional class representative with standing to bring claims in connection with the Spectrum Acquisition-related misrepresentations. *See Twitchell v. Enovix Corp.*, Nos. 23-cv-00071-SI, *et al.*, 2023 WL 3170044, at *8 (N.D. Cal. Apr. 28, 2023) ("the Court finds it would be prudent here to appoint a co-lead plaintiff who held [the company's] stock through the second disclosure" in order to protect the interests of the class); *Christian v. BT Grp. PLC*, No. 2:17-cv-00497-KM-JBC, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (appointing movant who lacked standing because the court took "some comfort in the [movant]'s offer 'to include an additional class representative who held shares . . . through the final disclosure' in an amended complaint"); *Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 WL 3252221, at *4 (N.D. Ill. July 19, 2019) (appointing movant that lacked standing for all corrective disclosures because, "[t]o the extent there are concerns about the [movant]'s incentives to pursue losses related to the second and third disclosures, the [movant] has represented that it will ensure that class representatives are added to the amended consolidated complaint to ward off loss causation challenges").

Continental General's refusal to protect the class is particularly troubling given that its appointment exposes the entire class to the additional risk that, should the Court ultimately conclude that Defendants did not mislead investors regarding the sustainability of Indocin revenues, the class would be left without *any* representative plaintiff with standing to pursue claims in connection with the Spectrum Acquisition-related disclosures in November 2023. *See, e.g.,*

*Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) (disqualifying movant because "the Court is concerned that if the [movant], as lead plaintiff, is unable to prove loss causation and is found to lack standing, the entire case could be dismissed"); *Lundy v. Ideanomics, Inc.*, No. 20 Civ. 4944 (GBD), 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (rejecting movant with unique trading defenses and noting that, "if Defendants are later successful in any opposition to class certification or [the movant] as the class representative as a result of [the movant's] unique defense, class members may be subject to statute of repose concerns"); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses"); *In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 920-21 (E.D. Mich. 2005) (granting summary judgment for defendants where the lead plaintiff sold its securities prior to the date the alleged fraud was found to have been revealed to the public and denying motion to intervene filed by class member who held securities through the disclosure).

*Third*, Continental General's claim that Fly Ry Adventures seeks to "balkanize" or "bifurcate" the litigation into two separate classes with their own lead plaintiffs, ECF No. 67 at 7-9, is misplaced. Fly Ry Adventures does not advocate for two separate classes or suggest that a single lead plaintiff cannot adequately represent the entire class. To the contrary, Fly Ry Adventures expressly argued in its reconsideration brief that it should be appointed as Lead Plaintiff precisely because it "has a great incentive to vigorously litigate ***all material issues in this case***." ECF No. 63 at 9-10 (quoting *Navistar*, 2013 WL 3934243, at *5); *see also Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) ("this Court sees no reason to subject the class to this potential defense where there is another movant [that is not subject to the unique trading defenses]"). Indeed, the issue presented here is not the

result of any problem inherent in the class's claims, but rather, Continental General's lack of standing to assert claims in connection with the November 2023 corrective disclosures creates a conflict of interest that prevents Continental General from adequately represent the entire class's interests. Whether or not Continental General would ultimately prevail in connecting both theories is of no moment for assessing Continental General's adequacy at this stage of the litigation. As explained by the Honorable Robert M. Dow, Jr., in *Hedick*, ***protecting*** the class from a movant who "will become distracted by defenses unique to [it] to the detriment of the rest of the class" is a sufficient basis to disqualify that movant. 2019 WL 4958238, at *5 n.5 (rejecting movant claiming the largest loss as "incapable of adequately representing the class" without taking a "position on the merits of these defenses at this time").

Fourth, the three cases cited by Continental General appointing lead plaintiffs that did not incur losses in connection with every corrective disclosure, *see* ECF No. 67 at 8, are inapplicable because—unlike the facts here involving ***two distinct*** sets of misrepresentations—the corrective disclosures in those actions involved the ***incremental*** revelation of truth regarding a singular theory of fraud. *See Mortimer*, 2019 WL 3252221, at *1, 4 (appointing movant who suffered losses in connection with the first of three disclosures revealing the truth about the company's pharmacy benefit management business); *Juliar v. SunOpta Inc.*, Nos. 08 Civ. 933(PAC), *et al.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (appointing group of investors where one group member sold after information about the company's accounting misconduct leaked into the market, but before the company restated its financial results); *Kusen v. Herbert*, No. 23-cv-02940-AMO, 2023 WL 8171736, at *8 (N.D. Cal. Nov. 24, 2023) (appointing movant that "suffered losses of over $600 million" after the initial corrective disclosures regarding the strength of the company's balance sheet and liquidity caused its stock to "f[a]ll more than $100 per share"). *Mortimer* is

further distinguishable given that the court expressly cited the movant's "commitment to add class representatives whose losses derive from the second and third disclosures" (unlike Continental General) in concluding that it satisfied the Rule 23 requirements. 2019 WL 3252221, at *4; *see also supra* at 5-7 (discussing importance of adding co-lead plaintiffs or additional class representatives to protect the class). *SunOpta* is also distinguishable because the court concluded that, "even if" the group member that sold before the final corrective disclosure was removed, the other group member would still be entitled to appointment as lead plaintiff. 2009 WL 1955237, at *2. Separately, Continental General's reliance on *In re Boeing Co. Aircraft Securities Litigation*, is misplaced because that decision: (1) rejected the request for appointment of a co-lead plaintiff to represent options investors because the presumptive lead plaintiff purchased common stock; (2) there were no concerns that the lead plaintiff could not establish loss causation; and (3) both investors otherwise relied on the same theory of fraud. No. 19 CV 2394, 2019 WL 6052399, at *10 (N.D. Ill. Nov. 15, 2019). Unlike these cases that are factually distinguishable, Continental General makes no effort to explain why the reasoned analysis in *Navistar* and *General Cable* should not be followed by the Court.

## II.     CONCLUSION

For these reasons, Fly Ry Adventures respectfully requests that: (1) its motion for reconsideration be granted; and (2) upon reconsideration, Fly Ry Adventures be appointed as Lead Plaintiff and its selection of Kessler Topaz as Lead Counsel be approved.

Dated: April 22, 2024

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul (#90751)
280 King of Prussia Road
Radnor, PA 19087

9

Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com

*Counsel for Fly Ry Adventures, LLC and
Proposed Lead Counsel for the Class*