**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| PERRY SHAPIRO, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | No. 24-cv-00169 |
| | Honorable Franklin U. Valderrama |
| ASSERTIO HOLDINGS, INC., DAN PEISERT, PAUL SCHWICHTENBERG, AJAY PATEL, SPECTRUM PHARMACEUTICALS, INC., THOMAS RIGA, and NORA BRENNAN, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................... 1

Argument .............................................................................................................................. 2

   I.   Plaintiffs Fail to State an Indocin 10b-5(b) Claim Against the Assertio Defendants. ........ 2

      A.   The Complaint does not plead a misrepresentation for the Indocin claims. .............. 2

      B.   The Complaint does not plead scienter for the Indocin claims. ................................ 4

      C.   The Complaint does not plead loss causation for the Indocin claims. ....................... 5

   II.   Plaintiffs Fail to State a Rolvedon 10b-5(b) Claim Against the Assertio Defendants. ....... 6

      A.   The Complaint does not plead a misrepresentation for the Rolvedon claims. ........... 6

           i.   Plaintiffs have not pleaded that Spectrum engaged in "improper sales practices." ................................................................................................... 6

          ii.   Plaintiffs do not allege that any Rolvedon-related statement was false or misleading. ............................................................................................. 9

         iii.   Plaintiffs do not allege any falsity in the October 10, 2023 Form 8-K. ...........11

         iv.   There is no particularized allegation that statements that Rolvedon "is not a biosimilar" were false or misleading. ............................................... 12

      B.   The Complaint does not plead scienter for the Rolvedon claims. .......................... 13

   III.   Plaintiffs Fail to State a 10b-5(b) Claim Against the Spectrum Defendants. ................... 19

      A.   Plaintiffs lack standing to assert this claim. ........................................................... 19

      B.   The Complaint does not plead a misrepresentation. ............................................... 20

      C.   The Complaint does not plead scienter. .................................................................. 20

   IV.   Plaintiffs Fail to State any Claim Under Rule 10b-5(a) and (c). ..................................... 21

   V.   Plaintiffs Fail to State a Claim Under Section 14(a). ...................................................... 22

Dismissal With Prejudice is Appropriate ............................................................................ 22

i

# TABLE OF AUTHORITIES

CASES

*Alizadeh v. Tellabs, Inc.*,
    2015 WL 557249 (N.D. Ill. Feb. 9, 2015) ...............................................................13

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)................................................................................................19, 20

*Busic v. Orphazyme A/S*,
    2022 WL 3299843 (N.D. Ill. Aug. 11, 2022) ...........................................................18

*Carps. Health & Welfare Fund v. Coca-Cola Co.*,
    321 F. Supp. 2d 1342 (N.D. Ga. 2004) ......................................................................8

*Chew v. Moneygram Int'l, Inc.*,
    2024 WL 4346522 (N.D. Ill. Sep. 30, 2024) ..............................................11, 18, 21

*City Of Livonia Emps' Ret. Sys. and Local 295/Local 851 v. Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) ...............................................................................14, 15

*College Ret. Equities Fund v. Boeing Co.*,
    2023 WL 6065260 (N.D. Ill. Sept. 18, 2023) .............................................................5

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) ....................................................................................18

*Friedman v. Rayovac Corp.*,
    295 F. Supp. 2d 957 (W.D. Wisc. 2003)...................................................................8

*Hedick v. Kraft Heinz Co.*,
    2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...........................................................18

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ...............................................................................13, 20

*In re Boeing Co. Aircraft Sec. Litig.*,
    2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) .............................................................5

*In re Cabletron Sys., Inc.*,
    311 F.3d 11 (1st Cir. 2002)........................................................................................8

*In re Connetics Corp. Sec. Litig.*,
    2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) .........................................................8

*In re Hain Celestial Grp., Inc. Sec. Litig.*,
  20 F.4th 131 (2d Cir. 2021) ............................................................................9

*In re Vocera Commc'ns Sec. Litig.*,
  2015 WL 603208 (N.D. Cal. Feb. 11, 2015) ...................................................8

*Kuebler v. Vectren Corp.*,
  13 F.4th 631 (7th Cir. 2021) .....................................................................1, 22

*Lucid Motors Sec. Litig.*,
  110 F.4th 1181 (9th Cir. 2024) ...............................................................19, 20

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024)....................................................................................2, 3

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2009) ...........................................................7, 14, 18

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
  54 F.4th 82 (2d Cir. 2022) ...........................................................................19

*MissPERS v. Mohawk Indus.*,
  564 F. Supp. 3d 1272 (N.D. Ga. 2021) ........................................................7

*Pension Tr. Fund for Operating Engs. v. Kohl's Corp.*,
  895 F.3d 933 (7th Cir. 2018) ...............................................................14, 21

*Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*,
  690 F. Supp. 3d 862 (N.D. Ill. 2023) ....................................................17, 21

*Pugh v. Trib. Co.*,
  521 F.3d 686 (7th Cir. 2008) ...............................................14, 15, 16, 18

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) .......................................................................5

*Seeks v. Boeing Co.*,
  2024 WL 4367846 (N.D. Ill. Sept. 30, 2024) ...........................................6, 11

*Smith v. Sci. 37 Hldgs., Inc.*,
  2023 WL 8807258 (N.D. Ill. Dec. 20, 2023) .............................................13

*Smykla v. Molinaroli*,
  85 F.4th 1228 (7th Cir. 2023) .....................................................................12

*Trahan v. Interactive Intel. Grp.*,
  308 F. Supp. 3d 977 (S.D. Ind. 2018) .......................................................13

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020) ......................................................................6, 7, 13, 15

**STATUTES**

15 U.S.C. § 78u-4 .............................................................................................................22

15 U.S.C. § 78u-5 .............................................................................................................10

**OTHER AUTHORITIES**

17 CFR § 240.10b-5(b) ......................................................................................................1

Form 10-Q General Instruction A.1
    (available at https://www.sec.gov/files/form10-q.pdf) ............................................11

SEC Financial Reporting Manual § 2045.16
    (available at https://www.sec.gov/files/cf-frm.pdf, https://www.sec.gov/about/divisions-
    offices/division-corporation-finance/financial-reporting-manual) ..........................11

<u>**INTRODUCTION**</u>

Plaintiffs have failed to show how the Complaint meets the exacting pleading requirements necessary to support their claims.

As to the Indocin-related claims, the Opposition's refrain is that Assertio "misleadingly downplayed" the risk of generic competition to Indocin (Opp. at 8, 9). But Plaintiffs have no good explanation for how investors would have been misled by Assertio's clear and consistent warnings. It is not enough for Plaintiffs to identify some detail about some aspect of that potential competition that was not explicitly discussed in the company's disclosures, and they do not plead with particularity the omission of any "material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5(b). The Opposition also points to *no* allegation of *any* fact indicating that any Assertio Defendant made any statement about this risk with intent to mislead. Plaintiffs also fail to explain how the August 3, 2023 FDA announcement of the approval of a 50 mg indomethacin competitor logically could have "corrected" the unrelated and insignificant purported omissions they do allege.

Plaintiffs' Rolvedon-related claims also must be dismissed. The Opposition concedes that *all* of the Rolvedon-related claims rest on Plaintiffs' contention that Spectrum's pre-merger sales were the product of "improper sales practices." But Plaintiffs fail to identify allegations *of fact* that would support such a claim. Moreover, Plaintiffs all but concede they do not plead any Assertio Defendant's scienter for any pre-merger alleged misrepresentation concerning Rolvedon, and they also fail to identify facts that could support scienter for any post-merger Assertio statement or any Spectrum statement. The Court need not even reach these questions as to the Spectrum Defendants, as all case law confirms Plaintiffs lack standing to bring any Section 10(b) claim against them.

Finally, despite what Plaintiffs say, "the PSLRA imposes heightened pleading requirements on Section 14(a) plaintiffs." *Kuebler v. Vectren Corp.*, 13 F.4th 631, 638 (7th Cir. 2021); *see* Opp.

at 30 ("The PSLRA . . . does not impose heightened pleading standards for Section 14(a) claims."). The Complaint's failure to meet the PSLRA's exacting pleading requirements in pleading the falsity of their Section 10(b) claims dooms their Section 14(a) claims as well.

**ARGUMENT**

**I.      Plaintiffs Fail to State an Indocin 10b-5(b) Claim Against the Assertio Defendants.**

**A.      The Complaint does not plead a misrepresentation for the Indocin claims.**

Plaintiffs cannot overcome the reality, conceded in the Complaint, that throughout (and before) the Class Period Assertio consistently disclosed the existence, scope, and immediacy of the risk that Indocin would face generic competition: "There are *no patents* covering the INDOCIN products (*which accounted for 64% of our revenue in 2022*), which means that a generic drug company could *introduce a generic* for these drugs *at any time.*" ¶ 155 (emphasis added). These disclosures also called out generic drugmakers' suitability petitions pending with the FDA, as well as the competition Indocin was "currently facing" from compounder Wells Pharma, and the litigation with Wells Pharma. ¶¶ 43, 56, 153-56; *see also* Ex. 5 at 3, 10, 19, 21-22, 37. Clinging to buzzwords found in case law, Plaintiffs now claim that Assertio did not disclose the "magnitude" of that risk, but it is not clear what further magnitude Plaintiffs believe existed beyond the potentially existential and imminent threat that was revealed in the company's disclosures.

Nor is this a case where Assertio only disclosed a "half-truth." Opp. at 9-10. The securities laws do not require disclosure of all details regarding any subject, or even disclosure of all material information. It "bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make ... statements made, in the light of the circumstances under which they were made, not misleading.'" *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024) (quoting Rule 10b-5(b); other quotations omitted). Plaintiffs cannot state a claim

2

for a material omission by simply pointing out some fact about the Indocin competition that was not explicitly stated in Assertio's public disclosures, but rather must plead with particularity why that allegedly omitted information made the disclosure materially misleading. *Id*.

Neither piece of allegedly "omitted information" here meets Plaintiffs' burden. *See* Opp. at 9. Plaintiffs first claim that Assertio "failed to disclose that multiple competitors had already applied for FDA approval of a generic version of Indocin." *Id*. But there is (1) no dispute that Assertio *did* disclose that it was "aware of other drug companies that have had interactions with . . . the [FDA] relating to indomethacin, which could indicate the development of one or more INDOCIN product generics," ¶ 154, and (2) no allegation that under FDA's confidential approval process any Assertio Defendant had knowledge of any fact about any other company's application that would make Assertio's disclosures about the risk of generic competition materially misleading. Second, Plaintiffs claim that although Assertio disclosed Wells Pharma's compounding of an Indocin competitor and those parties' legal dispute, Assertio "had no reasonable basis to conclude it would be able to prevent the compounder from continuing to operate." Opp. at 9. But Assertio never assured investors it would be able to prevent the compounder from continuing to operate. It disclosed the compounder's competitive actions "in what we believe to be violation of certain provisions of the Food, Drug, and Cosmetic Act," the actions it was taking in response, and the significant risks this issue posed to the company; there is no particularized allegation that Assertio's executives did not honestly hold that belief, or that its legal arguments were destined to fail as Plaintiffs assume. ¶¶ 56, 183, *see* Mot. at 13.

For the same reason, Plaintiffs do not adequately plead that Assertio's disclosure of its Q1 2023 Indocin sales "downplay[ed] the risk of generic competition to Indocin." Opp. at 9. Plaintiffs do not allege that the historical Q1 2023 sales numbers themselves were inaccurate, and do not

dispute that Assertio's disclosures about the risk of generic competition in fact *highlighted* that the potential impact of this risk was substantial *due to the fact* that, historically, Indocin sales accounted for the vast majority of Assertio's revenue. *E.g.*, ¶ 155.

**B.     The Complaint does not plead scienter for the Indocin claims.**

The Opposition does not meaningfully challenge any of the Motion's arguments regarding the Complaint's complete lack of allegations that could support scienter. *See* Mot. at 15-16. The only argument Plaintiffs make that *any* Individual Defendant knew *anything at all* is their reference to Mr. Peisert's "awareness of Assertio's dispute with Wells Pharma." Opp. at 12, citing ¶ 293. They allege no particular fact about the lawsuit of which he was purportedly "aware," do not dispute that the declaration Mr. Peisert signed in that Wells Pharma California Action solely concerned facts related to personal jurisdiction (Mot. at 16; Ex. 4), and make no attempt to explain why his general "awareness of" that lawsuit means he must have known that a different court in Texas would dismiss a different lawsuit on unrelated grounds (a decision that itself is now on appeal, Mot. at 14 n.7).

Plaintiffs' remaining scienter arguments are also empty. They do not explain how stock sales made on September 11, 2023, several weeks after the FDA approval announcement that is the sole alleged corrective disclosure related to the Indocin generic risk, could logically show any motive to mislead investors about that risk. Opp. at 12. Plaintiffs also do not explain how the departure of executives months later, which the Complaint attributes to disappointment with the Spectrum merger, could provide any weight in support of anyone's scienter for any Indocin-related alleged misrepresentation. *Id*. at 12. Nor does the Opposition supply any factual allegation in support of Plaintiffs' new theory that Assertio "rush[ed] the Merger to completion just days before [the FDA's] approval could happen." *Id* at 12-13. There is no allegation Assertio had any prior notice (and in fact Assertio had no such notice) that any competitor had applied for a 50 mg Indocin

4

generic, that any such application would be approved, or when the FDA would act on any such application. Core operations or other similar theories cannot save this claim; in the very limited situations where those theories may apply, they still require particularized allegations supporting an individual's scienter, including facts demonstrating access to contrary information. *See* Mot. at 43. It should go without saying, but some other entity's confidential application to FDA is not part of Assertio's core operation.

### C. The Complaint does not plead loss causation for the Indocin claims.

The fact that the element of loss causation is not subject to the PSLRA's or Rule 9(b)'s heightened pleading standards does not give Plaintiffs *carte blanche* to bring a claim without adequately pleading this essential element. *See* Opp. at 13. Nor does the Opposition's invocation of the "materialization of the risk" theory give Plaintiffs any relief. *Id.* at 14. In the same case as the district court opinion Plaintiffs cite in support of that theory, the Seventh Circuit later explained that materialization of the risk "is not a legal doctrine of anything special as a matter of fact. . . . Although 'materialization of the risk runs like a mantra through the parties' briefs, we do not think that it has any significance." *Schleicher v. Wendt*, 618 F.3d 679, 683 (7th Cir. 2010); *see College Ret. Equities Fund v. Boeing Co.*, 2023 WL 6065260, at *25 (N.D. Ill. Sept. 18, 2023). Whatever label Plaintiffs choose to place on their loss causation theory, they must plead "plausible allegations that when corrective information became available to the public, that information caused the share price to drop—not because of the information itself, but because the information revealed the falsity of statements by defendants." *In re Boeing Co. Aircraft Sec. Litig.*, 2022 WL 3595058, at *28 (N.D. Ill. Aug. 23, 2022).

Plaintiffs do nothing to explain how the August 3, 2023 disclosure that a competitor "received approval from the FDA to manufacture and market 50mg indomethacin suppositories" (¶ 259) *corrected* or *revealed the falsity* of Assertio's earlier statements that allegedly were

5

misleading for "omitting information relating to . . . an ANDA for a 100 mg indomethacin suppository and Assertio's lawsuits with Wells Pharma" (¶¶ 157, 181, 184, 191). As it recently did in *Seeks v. Boeing*, the Court should dismiss the Indocin-related misrepresentations for failure to plead loss causation because the alleged corrective disclosure "does not contradict" those statements and Plaintiffs "have not pled how [the August 3, 2023] statement corrected [the earlier] statements." *Seeks v. Boeing Co.*, 2024 WL 4367846, at *23 (N.D. Ill. Sept. 30, 2024).

## II.     Plaintiffs Fail to State a Rolvedon 10b-5(b) Claim Against the Assertio Defendants.

### A.     The Complaint does not plead a misrepresentation for the Rolvedon claims.

Plaintiffs concede that their allegations of falsity for all Defendants' statements concerning Rolvedon rely on the argument that Spectrum's pre-merger sales "were a result of channel stuffing." Opp. at 15; *see also* Opp. at 17 ("[Defendants'] sales practices made the past Rolvedon sales that Defendants promoted and other promotions of Rolvedon on that basis, completely unsustainable"), 22 ("The Assertio Defendants disclosed unfounded projections for Rolvedon sales that were unrealistic because they were based on past sales that were the result of channel stuffing"). Plaintiffs' failure to support their generalized allegations of channel stuffing with particularized facts meeting their burden thus dooms all of their Rolvedon-related claims.

#### i.     Plaintiffs have not pleaded that Spectrum engaged in "improper sales practices."

The Complaint does not meet Plaintiffs' burden to plead with particularity the bedrock allegation of "improper sales practices" that underlies all of their Rolvedon-related claims. The court's reasoning in *Conagra*, which Plaintiffs fail to meaningfully distinguish, is directly on point. *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 640 (N.D. Ill. 2020). To plead that an accurate statement of past sales numbers was misleading due to supposed improper sales practices, "Plaintiffs must allege facts showing that [the company] shifted

6

sales to earlier periods for an illegitimate reason." *Id.*; *see Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. 2009) ("*Tellabs II*") ("Channel stuffing becomes a form of fraud only when it is used . . . to book revenues on the basis of goods shipped but not really sold.").

Plaintiffs' attempt to distinguish *Conagra* rests on repeating their own unsupported descriptions of Spectrum's sales efforts. Opp. at 4-5, 16. A review of the underlying allegations confirms that the creditable *facts* alleged still just boil down to "the fact that 'there were high levels of inventory in the channel at the end of the second quarter.'" Opp. at 5, quoting ¶ 98; *see* Mot. at 18-19. Plaintiffs do not explain why this fact is revelatory, particularly for a new oncology product for which customers had no significant history of patient demand to use to calibrate their order. *See* ¶ 74. "Having high channel inventory is not inherently fraudulent," and "[t]here is nothing inherently improper in pressing for sales to be made." *Conagra*, 495 F. Supp. 3d at 630 (citations omitted). Plaintiffs "must still plead facts plausibly suggesting that [any] price discounts were fraudulent attempts to overstate sales." *Id.* at 640. There are no such allegations here, nor any allegations that customers were sold products they did not need, nor of any other facts showing that "'the purpose of [any sales efforts] was to conceal the disappointing demand for the product rather than to . . . attract new customers.'" *Id.* at 640 (quoting *Tellabs II*, 513 F.3d at 710).

Plaintiffs seek to cure their deficient allegations by advocating for a lesser pleading burden, but none of the opinions they cite support that lower hurdle. Opp. at 16. Instead, the level of detailed facts alleged in each of those cases reinforces that Plaintiffs' allegations are insufficient:

- The *MissPERS* court held allegations of channel stuffing to be sufficiently particularized where plaintiffs alleged detailed facts showing that, for more than two years, on the last Saturday of every quarter, executives directed all company distribution centers nationwide to load items ordered by customers for future delivery, and to generate invoices recognizing the sales as occurring in the current quarter even though the sale was not supposed to occur until a future date, causing the customers to reject the deliveries at the start of the next quarter when the goods would returned. *MissPERS v. Mohawk Indus.*, 564 F. Supp. 3d 1272, 1298-99 (N.D. Ga. 2021).

- In *Vocera*, the allegations were sufficient because they included facts showing that throughout the class period the company "was consistently falling short of its sales and revenue projections" within each quarter, but at the end of each quarter "a sudden and substantial influx of revenue would occur in the run-up to reporting" due to the company's "practice of shipping products ahead of time to make up for its shortfall..." *In re Vocera Commc'ns Sec. Litig.*, 2015 WL 603208, at *1 (N.D. Cal. Feb. 11, 2015).

- The allegations in *Carpenters* were sufficient because the plaintiffs alleged, for multiple different customers, a "specific channel stuffing transaction, including the name of the bottler, the amount of revenue improperly recognized, and when the transaction occurred," including factual "support for their information and belief allegations." *Carps. Health & Welfare Fund v. Coca-Cola Co.*, 321 F. Supp. 2d 1342, 1349, 1351-52 (N.D. Ga. 2004).

- In *Friedman*, allegations were sufficient because the plaintiffs alleged facts showing that "channel stuffing at Rayovac was endemic and became more aggressive as time went on [and] that various techniques were continually used to get customers to purchase quantities greatly in excess of their needs." *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 970-72, 987 (W.D. Wisc. 2003).

- The *Cabletron* allegations of channel stuffing were sufficiently particularized because "the level of detail" was "significant," including identifying the specific distributors and sales practices involved. *In re Cabletron Sys., Inc.*, 311 F.3d 11, 32-33 (1st Cir. 2002).[1]

The Complaint's allegations would not pass muster in any of those courts.

The CWs also do not save Plaintiffs' allegations. Plaintiffs acknowledge they must plead "sufficient facts which show that these [CWs] have first-hand knowledge of the facts ascribed to them," Opp. at 19, and do not rebut Defendants' argument that the statements of their only CWs who would have such first-hand knowledge in fact contradict, rather than support, Plaintiffs' theory of fraud, Mot. at 19, 22. Nor do Plaintiffs make any attempt to dispute the CWs' discrediting biases. Mot. at 22. The Opposition also distorts those CWs' allegations, contending that CW4 alleged that Spectrum was booking revenue for sales of product it did not ship. Opp. 16. There is no such

---

[1] Another of Plaintiffs' cases did not even address falsity. *In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at *2, *9-10 (N.D. Cal. Aug. 14, 2008) (because defendants had already formally restated the prior financial statements admitting to accounting errors related to the channel-stuffing scheme, defendants did not contest the falsity of those prior statements, and the court only assessed defendants' scienter, which it held was pleaded based on significant detailed allegations of the executives' personal knowledge of the admitted scheme).

particularized allegation in the Complaint, nor even any general allegation in the Complaint that any sales revenue was improperly accounted for prior to shipping. Rolvedon was shipped at the time of sale. The fact that for some providers "the product is not in the office so you pull *from the inventory*" reflects the reality that some of this bulk-purchased product (like many other products sold by other drug manufacturers) is stored *by the customer* in off-site *inventory*, to be retrieved and used by those providers as needed. ¶ 133 (emphasis added).[2]

The proposition in *Hain*—that channel stuffing "does not depend on whether the alleged channel stuffing practices themselves were fraudulent or otherwise illegal"—is inapposite. *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 137 (2d Cir. 2021)*, quoted in* Opp. at 17. In *Hain*, the question was whether the fact that the sales practices were not "inherently fraudulent" on a scheme liability theory meant they also could never support a claimed fraudulent misrepresentation. *Id*. Plaintiffs' allegations here explicitly rely on "improper sales practices," and regardless of whether the alleged sales practices were in isolation "illegal," Plaintiffs' claim requires that the sales were of a character that made the disclosure of the sales numbers fraudulent. Plaintiffs have not alleged particularized facts supporting such a conclusion.

### ii. Plaintiffs do not allege that any Rolvedon-related statement was false or misleading.

Plaintiffs' failure to allege that Spectrum engaged in improper channel stuffing necessarily means that they fail to allege that any Rolvedon-related statement was false or misleading. *See* Mot. at 17-18, 23-24. Like the alleged misrepresentations regarding historical sales (*id.* at 23-24), the alleged misrepresentations regarding projected future sales (*id*. at 24-29) and the benefits of the merger generally (*id*. at 29-31) also hinge on those historical sales being the product of

---

[2] As discussed in Section II(A), *infra*, Plaintiffs are also wrong in arguing that Spectrum's 2022 Form 10-K is "not referenced in the Complaint." Opp. at 18; *see* Mot. at 20 nn.13, 14. It is referenced in the Complaint, and properly considered (and assumed true) at this stage.

improper sales practices that made those sales materially misleading. The Court thus need not reach the other reasons why Plaintiffs fail to allege each statement's falsity, but as described in the Motion there are additional reasons why Plaintiffs have not met the PSLRA's requirements.

As to the projections, Plaintiffs do not dispute that the allegations from CWs 2, 3, and 4, on which they rely, do not even relate to the projections that are the subject of their claim, but instead relate to the separate CVR milestone. *See* Mot. at. 25-27. These uncorroborated allegations by persons who were not even at Assertio when the projections were created are not legally creditable to begin with, and are also irrelevant to the allegedly misleading Assertio projections. *Id.*

Plaintiffs argue that Defendants' Rolvedon projections are not protected under Subsection A of the safe harbor because the accompanying cautionary language "was too general and did not warn about Spectrum's sales practices." Opp. at 24. But Assertio had no duty to "warn" about Spectrum's sales practices, both because there was nothing improper about them and because that level of detail in cautionary language is not required for the safe harbor to apply. *See* Mot. at 18-21. As to the separate safe harbor under Subsection B (which applies even in the absence of cautionary language), Plaintiffs acknowledge that the "actual knowledge" requirement is even higher than the standard for pleading scienter, and as discussed in the Motion, Plaintiffs do not plead facts showing that any Defendant knew any forward-looking statement was false. Plaintiffs also misconstrue the case law in arguing that Defendants' projections are not entitled to the safe harbor—such projections are explicitly listed as protected in the statute's text. 15 U.S.C. § 78u-5(i)(1) (including "statement containing a projection of revenues . . . or other financial items" in the definition for forward-looking statements); *see also* Mot. at 27.

Plaintiffs' argument that the Court should not decide whether any statement is inactionable

puffery at this stage flies in the face of the considerable number of court decisions doing just that. Mot. at 24, 29; *see also Boeing*, 2024 WL 4367846, at *15; *Chew v. Moneygram Int'l, Inc.*, 2024 WL 4346522, at *12 (N.D. Ill. Sep. 30, 2024). The Court can and should decide now that Plaintiffs' allegations do not support that Defendants' generalized expressions of confidence in the business were material statements that could mislead a reasonable investor. *See* Mot. at 24-25, 29, 31; ¶¶ 160, 163, 166, 167, 171-72, 188, 226, 229, 233-35, 249, 254.

### iii. Plaintiffs do not allege any falsity in the October 10, 2023 Form 8-K.

Plaintiffs' new (unpleaded) theory that Assertio misled investors on October 10, 2023 by failing to include Spectrum's pre-merger Q2 2023 Rolvedon sales numbers in the Form 8-K does not make any sense. Opp. at 21; *see* ¶ 248. As the Complaint itself alleges, Assertio *had already disclosed Spectrum's Q2 2023 Rolvedon sales* during the August 3, 2023 Investor Call. ¶¶ 233-34. Moreover, Plaintiffs continue to get Rule 9.01 wrong. No Q3 2023 financial results were reportable for the reasons discussed in the Motion. Mot. at 31-32. And Spectrum's Q2 2023 financial results also were not reportable under Rule 9.01 because there were not "two or more interim quarters" of undisclosed pre-merger financial results. SEC Financial Reporting Manual § 2045.16.[3] Plaintiffs can point to no rule requiring that any additional financial information be included in the Form 8-K, nor any factual allegation supporting their suggestion that Assertio "did not want to publish them because they were misleading." Opp. at 22.

---

[3] *Available at* https://www.sec.gov/files/cf-frm.pdf, https://www.sec.gov/about/divisions-offices/division-corporation-finance/financial-reporting-manual (providing instruction and example that if the "Form S-4 included unaudited financial statements for three months ended March 31 for a business to be acquired" and "[t]he business combination was consummated in October," "[n]o financial statements are required in the Form 8-K, unless there were significant subsequent events [within that omitted pre-merger period] that would materially affect an investor's understanding of the target company"); *see also* Form 10-Q General Instruction A.1, *available at* https://www.sec.gov/files/form10-q.pdf (providing that quarterly results are not due until 40 days after the end of the fiscal quarter).

### iv. There is no particularized allegation that statements that Rolvedon "is not a biosimilar" were false or misleading.

Rolvedon is not a biosimilar. It is not clear why Plaintiffs insist on trying to bring a claim that relies on showing otherwise, rather than acknowledging their error and moving on (especially as there also is no allegation of any corrective disclosure of this "fact"), but whatever the reason the fact remains they have not met their burden to plead the falsity of the statements that Rolvedon "is not a biosimilar." Plaintiffs do not meaningfully engage with Defendants' arguments, responding only that "Rolvedon was a biosimilar, as explained by CWs 1 and 2," and that "Defendants also improperly rely on a Spectrum SEC filing that may not be considered for its truth because it is not referenced in the Complaint." Opp. at 41. As Defendants previously explained, the allegations from CWs 1 and 2 say no such thing. Mot. at 33. Plaintiffs' misreading of their own CWs' vague statements—uncorroborated by any other source—does not meet the "[e]xacting pleading requirements" demanded by PSLRA. *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023); *see* Mot. at 9 & n.3 (collecting cases explaining that CW allegations must be corroborated by disclosed sources).

Moreover, Plaintiffs are flat wrong in arguing that the Spectrum 2022 Form 10-K—which they do not dispute makes clear that *Rolvedon is not a biosimilar*—"is not referenced in the Complaint" and thus may not be considered. Opp. at 41. The Complaint makes several references to what Plaintiffs define as the "Proxy Solicitations." *E.g.*, ¶¶ 199-224, 343-44, 349, 353-54, 358, 368. And it defines those Proxy Solicitations as the June 2, 2023 Form S-4, the June 14, 2023 Form S-4/A, and the June 15, 2023 Joint Proxy Statement and Prospectus, *"including statements that these documents incorporate by reference."* ¶ 343 (emphasis added). Each of those three June 2023 filings explicitly "incorporated by reference into this joint proxy statement/prospectus . . . Spectrum's Annual Report on Form 10-K, as amended, for the year ended December 31, 2022."

Ex. 14 at 30; Ex. 15 at 30; Ex. 16 at 30. Even if Plaintiffs had not included this referenced document within their own definition, the fact that the document is "incorporated by reference into the Proxy Statement" is alone sufficient for the Court to consider it incorporated by reference into the Complaint that references that proxy statement. *Trahan v. Interactive Intel. Grp.*, 308 F. Supp. 3d 977, 995 n.16 (S.D. Ind. 2018). And because the document is properly considered under the incorporated-by-reference doctrine as a part of Plaintiffs' own Complaint (as opposed to solely under judicial notice), it is also proper for the Court to assume the truth of the statements therein. *Smith v. Sci. 37 Hldgs., Inc.*, 2023 WL 8807258, at *6 (N.D. Ill. Dec. 20, 2023); *Alizadeh v. Tellabs, Inc.*, 2015 WL 557249, at *1 & n.1 (N.D. Ill. Feb. 9, 2015).

**B.    The Complaint does not plead scienter for the Rolvedon claims.**

Plaintiffs' scienter arguments are premised on an impermissible theory of fraud by hindsight. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759-60 (7th Cir. 2007) (rejecting scienter allegations based on hindsight because "there is no 'fraud by hindsight'"). Assertio's sales of Rolvedon did not meet projections in the periods immediately following the merger, and "the only possible explanation [is] that Assertio 'didn't do their diligence' or 'homework' before they agreed to the deal." Opp. at 35. But Plaintiffs cannot "use a 'must have known' theory as an end-run around the requirement that plaintiffs set forth particularized facts to suggest that defendants acted knowingly or recklessly." *Conagra*, 495 F. Supp. 3d at 659 (citations omitted).

Unable to meet their burden, Plaintiffs instead try to lower that burden, making the plainly erroneous argument that they do not need to allege that any Defendant had the requisite scienter at the time of an alleged misrepresentation, but can instead just plead that Defendants "had scienter during the Class Period." Opp. at 32-33. The law clearly requires the speaker to have the requisite state of mind at the time of the alleged misrepresentation; later-learned facts cannot make an earlier statement fraudulent. The PSLRA requires that Plaintiffs "state with particularity facts giving rise

to a strong inference that the defendants *acted with* the required state of mind," evidencing "defendants' intention to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 313-14 (quoting § 78u-4(b)(2)) (emphasis added). Plaintiffs cannot do that without showing that Defendants were "aware of or recklessly disregarded [information making a statement false or misleading] *at the time*" of that statement. *Pugh v. Trib. Co.*, 521 F.3d 686, 696 (7th Cir. 2008) (emphasis added).

<u>*Pre-Merger Statements*</u>

Plaintiffs concede the Complaint includes no allegation that any Assertio Defendant knew of any alleged Spectrum improper sales practices before the merger. Under Plaintiffs' theory, "Assertio learned about the channel stuffing soon after the Merger." Opp. at 32; *see* Opp. at 6. There is no argument that any Assertio Defendant made any pre-merger statement with knowledge that it was false or misleading.

That leaves Plaintiffs arguing that the Assertio Defendants acted with "reckless disregard of a substantial risk that the statement[s] [were] false." *Pugh*, 521 F.3d at 693. Recklessness is an "extreme departure from the standards of ordinary care" such that "the danger [of a statement's falsity] was either known to the defendant or so obvious that the defendant must have been aware of it." *City Of Livonia Emps' Ret. Sys. and Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 756 (7th Cir. 2013). This is a substantial burden—Plaintiffs must show why it was "reckless, rather than just negligent," for the Assertio Individual Defendants not to "realize that something was amiss." *Pension Tr. Fund for Operating Engs. v. Kohl's Corp.*, 895 F.3d 933, 939 (7th Cir. 2018).

Plaintiffs have not carried that high burden here. First, as discussed above, they have not alleged that there was anything amiss with Spectrum's sales to begin with. Nor do they plead how the Assertio Defendants' "disregard" during diligence of any available information about those sales practices was "reckless," such that their actions during diligence was "an extreme departure

14

from the standards of ordinary care." *Boeing*, 711 F.3d at 756. Plaintiffs cite to the allegations of CWs 3 and 4, neither of whom were at Assertio before the merger or had any role in the due diligence that occurred, and both of whom offer only vague conjecture that Assertio "should have done their homework" and "didn't do their due diligence." ¶¶ 121-22, 127, 129. They do not even allege basic facts such as what due diligence took place, what due diligence was required, or what additional facts due diligence should have revealed. *See Conagra,* 495 F. Supp. 3d at 659. The CWs' allegations amount to nothing more than uninformed speculation and do not rise to the level of particularized fact that would support the strong inference of severe recklessness required under the PSLRA. *Pugh*, 521 F.3d at 694 (allegation that executives were reckless in not verifying "the accuracy of their newspaper sales" was "wholly conclusory" and did not support scienter).

<u>Post-Merger Statements</u>

The scienter allegations for the post-merger statements likewise do not meet Plaintiffs' burden. All but two of the alleged misrepresentations were made within the first eight days following the merger, between August 1 and 8, 2023. ¶¶ 225-242. There is no particularized allegation that in that timeframe any Assertio Defendant learned anything about any alleged improper sales practices, or about disappointing post-merger sales, or about any other information that would contradict those disclosures. Mot. at 36; ¶¶ 102-13, 295. Plaintiffs' theory that Mr. Peisert admitted knowledge of the supposed channel stuffing on November 8 by stating "that 'certain aspects of the acquisition may not be everything we initially expected'" makes no sense. *See* Opp. at 36 (quoting ¶ 271). The statement contains no reference to or inference of any improper sales practices, and makes clear the disappointing results announced that day were *not* what was expected.

The Opposition does not point to any scienter allegations concerning the Form 8-K filed

on October 10. As discussed in the Motion, Plaintiffs' allegations about the Individual Defendants' knowledge of post-merger sales consists solely of the uncorroborated statements of CW1, who describes weekly meetings culminating in a realization at the end of September that Q3 sales "didn't come in as expected." ¶¶ 105-06; Mot. at 36. Plaintiffs cannot explain how they meet their burden to plead that any Defendant intended to deceive investors by failing to disclose those disappointing Q3 sales numbers ten days later on October 10 (when they were not due to be released), rather than in November in connection with its Q3 earnings release and Form 10-Q (as they did, and as SEC regulations provide). *See* Mot. at 37.

The Opposition also has no answer for how Plaintiffs have met their burden to plead that any Assertio Defendant intended to deceive investors in their statements on November 8, 2023, when they disclosed those disappointing results. ¶¶ 249-55.

Plaintiffs' circumstantial allegations concerning stock sales, personnel changes, and SOX certifications do not move the needle either. For stock sales to be due any weight in the scienter analysis, it is Plaintiffs' burden to show they are "unusual or suspicious." *Pugh*, 521 F.3d at 695. Plaintiffs do not explain what they believe makes these particular sales on September 11, 2023 suspicious other than generally referring to the fact that the Complaint alleges that, according to CW1, Assertio executives received Rolvedon sales figures "starting in July 2023" and had weekly meetings to review sales figures. Opp. at 34. Plaintiffs ignore that CW1 does not claim that anyone at Assertio saw any sales figures that indicated a "drop off" from the prior quarter until September 25. ¶106. Nor does it make any sense that such stock sales would be indicative of a motive to defraud, because there is no alleged misrepresentation after September 11 other than the October 10 Form 8-K (in which there would be no reason to provide Q3 sales numbers) and the November 8 Q3 earnings announcement (where those sales numbers were disclosed).

Plaintiffs also do not identify any fact demonstrating any personnel change involving any Individual Defendant was made under "suspicious circumstances" supporting an "inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraud[]," as opposed to "business reasons" like disappointment with the Spectrum merger. *Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*, 690 F. Supp. 3d 862, 893 (N.D. Ill. 2023). The Complaint itself alleges that Mr. Peisert "was terminated by the Assertio Board because the Board 'blamed him for the failure of the Spectrum acquisition'"—a common business reason for a personnel change and not indicative of suspicious circumstances substantiating a fraud. ¶ 111. And Plaintiffs do not contest that the SOX certifications are irrelevant without particularized allegations the signers "knew or were reckless in failing to recognize that the SEC filings were false at the time they made the certifications." Mot. at 38.

## Core Operations and "Corporate Scienter"

Implicitly acknowledging their failure to plead facts supporting the requisite strong inference of scienter for any individual, Plaintiffs also ask the Court to apply the core operations doctrine and a version of "corporate scienter" that is out of step with the law. Opp. at 7-8.

As discussed in the Motion, the Complaint does not plead facts showing the existence of specific contradictory information within Assertio (or Spectrum) that would be necessary to support any application of the core operations doctrine. Mot. at 43. Plaintiffs' citation to *Pampena v. Musk* (Opp. at 38) does not counsel otherwise. There, the court held that the core operations doctrine applied to "statements [that] pertained to [Defendant] himself and the Merger agreement he had personally negotiated"—not to any fact he allegedly should have known pre-merger about the target company—and even then only because the complaint also included "allegations . . . that are particular and suggest that the defendant had actual access to the disputed information." 705 F.

Supp. 3d 1018, 1048-49 (N.D. Cal. 2023). Plaintiffs identify no such allegations here.

As to Plaintiffs' "corporate scienter" theory, the Seventh Circuit has recognized that "in extreme cases" it may be possible for a plaintiff to draw an inference of scienter "without being able to name the individuals who concocted and disseminated the fraud"—for example, where a car company "announced that it had sold one million SUVs . . . and the actual number was zero," the announcement necessarily "would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false." *Tellabs II*, 513 F.3d at 710; *Moneygram*, 2024 WL 4346522, at *23. "But *Tellabs [II]* did not relieve securities fraud plaintiffs of their burden to allege particular facts that give rise to the strong inference that at least one individual acted with scienter." *Moneygram*, 2024 WL 4346522, at *23. Plaintiffs are wrong that they may plead scienter even if the Complaint "did not allege scienter for any specific individual." Opp. at 39. The Seventh Circuit has made clear post-*Tellabs II* that "the corporate scienter inquiry must focus on 'the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve its making or its issuance, or who furnish information or language therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees.'" *Pugh*, 521 F.3d at 697 (quoting *Tellabs II*, 513 F.3d at 708); *see Busic v. Orphazyme A/S*, 2022 WL 3299843, at *22 (N.D. Ill. Aug. 11, 2022) (same); *Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at *11-12, 14 (N.D. Ill. Aug. 11, 2021) (finding corporate scienter adequately alleged where plaintiff alleged executives' knowledge, from specific reports and meetings, of information contradicting public statements).

"The PSLRA requires that the complaint state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind. . . . As a result, plaintiffs must create a strong inference of scienter with respect to *each individual defendant*." *Cornielsen v.*

*Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 601-02 (7th Cir. 2019) (emphasis in original) (citations omitted). The Complaint does not plead any facts that would give rise to a strong inference that any Individual Defendant acted with the requisite scienter.

### III. Plaintiffs Fail to State a 10b-5(b) Claim Against the Spectrum Defendants.

#### A. Plaintiffs lack standing to assert this claim.

Plaintiffs cite *no* support for their claimed standing to pursue Section 10(b) claims against the Spectrum Defendants, other than dicta in a rejected concurring opinion. As Plaintiffs note, there apparently is no court within the Seventh Circuit that has even been presented with Plaintiffs' novel theory. And in every circuit where courts have addressed the issue, the circuit court has squarely ruled that Plaintiffs' theory is contrary to binding United States Supreme Court precedent. *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022); *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024).

The Opposition imagines an exception to these rulings, arguing they do not apply because some of "the Spectrum Defendants' statements . . . were about how Spectrum would benefit Assertio through the Merger." Opp. at 42. But *Menora* and *Lucid* each *rejected* such an exception. The *Menora* court refused to adopt the plaintiff's argument that courts should determine whether "there was a sufficiently 'direct relationship'" between the target company's misstatements and the acquiring company's share price, holding that *Blue Chip* prevented such an inquiry, even where the plaintiff pointed to "joint press releases" and similar alleged misrepresentations. 54 F.4th at 86-87 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755 (1975)).

The *Lucid* court agreed, explaining that Supreme Court precedent "confines standing to 'purchasers or sellers of the stock in question,'" and rejecting as "inconsistent with *Blue Chip*" plaintiffs' "conten[tion] that the 'stock in question' is . . . not necessarily a security of the company that made the alleged misrepresentations." 110 F.4th at 1185-86 (quoting *Blue Chip*, 421 U.S. at

742). The court refused to consider "whether the security the plaintiff purchased is sufficiently connected to the misstatement," as Plaintiffs ask here, holding that "[t]he Supreme Court adopted a bright-line rule for standing—even at the risk of it being 'arbitrary' in some cases—to avoid the type of 'endless case-by-case' analysis contemplated by Plaintiffs." *Id*. at 186 (quoting *Blue Chip*, 421 U.S. at 738-39). Thus "Plaintiffs would need to have purchased or sold [the acquired company's stock] to have standing to bring this action under Section 10(b)." *Id*. at 1187.

### B. The Complaint does not plead a misrepresentation.

Plaintiffs agree that the Spectrum Defendants' statements concerning Rolvedon are alleged to be "false and misleading for the same reasons as the same or similar statements by the Assertio Defendants." Opp. at 41. Those allegations also fail to meet Plaintiffs' burden for the same reasons. Mot. at 39-41. The fact that Spectrum's projections "were even higher than the Assertio projections" (Opp. at 41) does not lower Plaintiffs' burden to plead facts showing them to be false, or remove the safe harbor, or in any other way make Plaintiffs' hindsight-based claim proper.

### C. The Complaint does not plead scienter.

The Opposition confirms that Plaintiffs' allegations of the Spectrum Defendants' scienter are based entirely on innuendo, not the particularized facts creating a "strong inference" of "an intent to deceive, demonstrated by knowledge of the statement's falsity, or reckless disregard of a substantial risk that the statement is false" that the law demands. *Higginbotham*, 495 F.3d at 756. Plaintiffs are unable to identify *any* allegation that they contend shows Ms. Brennan's knowledge of anything. Opp. at 43. As to Mr. Riga, they cite only the uncorroborated and uncreditable statements of two CWs. *Id.* (citing ¶¶ 108, 124, 126). The Complaint's unparticularized second-hand recounting of what CW1 purportedly "explained" about Spectrum "executives, including Defendant Riga, misrepresent[ing] Spectrum's finances and potential in the course of the acquisition" (¶ 108) is due no weight under the PSLRA or Rule 9(b), and alleges no substance

about Mr. Riga's knowledge of any challenged statement's falsity. As to CW3 (who, unlike CW1, actually worked at Spectrum), the Opposition claims that CW3 "implicat[ed] a Spectrum executive that reported to Riga" (Opp. at 43), but does not dispute that such an allegation would be legally insufficient to plead Mr. Riga's scienter. Mot. at 42. The Opposition also inaccurately describes the Complaint's allegations about that lower-level executive. CW3 himself does not claim to have knowledge of any channel stuffing (which is itself meaningful, given his role as Executive Director for Sales), and thanks to Plaintiffs' selective quotation, all we know about what CW3 said about "the SVP of Sales and Marketing" is that "*if* there was channel stuffing" he would think that SVP "knew something." ¶ 298; *see* Mot. at 42.

Plaintiffs' additional circumstantial allegations of scienter offer nothing to strengthen their claim. The Individual Spectrum Defendants' alleged motive to sell the company or increase the value of their stock is nothing more than "a generalized motive common to all corporate executives" that is as a matter of law too generic to establish scienter. *Moneygram*, 2024 WL 4346522, at *21; *Kohl's*, 895 F.3d at 939-40. And the allegation that Spectrum's SVP of Sales and Marketing left the company after the merger says nothing about Mr. Riga's or Ms. Brennan's scienter. *See Phoenix*, 690 F. Supp. 3d at 894. The Opposition's fleeting mention of core operations fails for the reasons Defendants explained in detail in the Motion, and its brief invocation of "corporate scienter" fails for those reasons too. Opp. at 44; Mot. at 43; *see supra* § II(B).

## IV. Plaintiffs Fail to State any Claim Under Rule 10b-5(a) and (c).

Plaintiffs misstate Defendants' arguments as to why the Complaint does not plead a scheme liability claim. Nowhere do "Defendants argue that these claims may not be based on the same allegations as Plaintiffs' misrepresentation claim." *See* Opp. at 45. On the contrary, Defendants clearly explain that *because* Plaintiffs' scheme liability claims are based on the same alleged set of

facts as their misrepresentation claims, the scheme claim fails for the same reasons, citing several post-*Lorenzo* cases in support. Mot. at 44.

Plaintiffs also vaguely avow that the Complaint alleges that Defendants "engaged in deceptive conduct separate from their misstatements," Opp. at 45, but ignore Defendants' demonstration that the Complaint admits all of its claims are based on Defendants' alleged false or misleading statements, Mot. at 45, and do not explain how any conduct separate from those statements allegedly "deceived" Plaintiffs. Scheme liability is not a mechanism to plead a securities fraud claim without adequately alleging its essential elements.

## V. Plaintiffs Fail to State a Claim Under Section 14(a).

Plaintiffs misstate the law in contending that "[t]he PSLRA . . . does not impose heightened pleading standards for Section 14(a) claims." Opp. at 30. The Seventh Circuit has explicitly held the opposite: "the PSLRA imposes heightened pleading requirements on Section 14(a) plaintiffs." *Kuebler*, 13 F.4th at 638. While no state of mind is required, Plaintiffs still must plead the falsity of each alleged misstatement with the same level of particularity as required for their Section 10(b) claims. *Id.*; 15 U.S.C. § 78u-4(b)(1). Because they do not do so for any statement in the Proxy Materials, the Complaint does not state any Section 14(a) claim. Mot. and *supra* §§ II(A), III(B).

### DISMISSAL WITH PREJUDICE IS APPROPRIATE

Because from the face of the Complaint amendment would be futile as to the elements of falsity and loss causation for Plaintiffs' Indocin-related claims, and as to their lack of standing to assert any Section 10(b) claim against the Spectrum Defendants, dismissal of those claims with prejudice is appropriate. Plaintiffs' failure to suggest "how they might accomplish" remedying the flaws with any of their claims supplies a separate basis to deny their request to amend as to all of their claims. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018).

Dated: November 14, 2024

BAKER BOTTS L.L.P.

*/s/ John B. Lawrence*
John B. Lawrence (admitted *pro hac vice*)
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
(214) 953-6500
john.lawrence@bakerbotts.com

Kevin M. Sadler (admitted *pro hac vice*)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
(650) 739-7500
kevin.sadler@bakerbotts.com

Scott D. Powers (admitted *pro hac vice*)
401 South 1st Street, Suite 1300
Austin, Texas 78704
(512) 322-2500
scott.powers@bakerbotts.com

James J. Beha II (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
jim.beha@bakerbotts.com

*Attorneys for Assertio Holdings, Inc., Paul
Schwichtenberg, Ajay Patel, Spectrum
Pharmaceuticals, Inc., Thomas Riga, and
Nora Brennan*

BAKER MCKENZIE LLP

*/s/ Michael D. Lehrman*
Michael D. Lehrman (Bar No. 6313339)
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
(312) 861-8000
michael.lehrman@bakermckenzie.com

Aaron Goodman (admitted *pro hac vice*)
10250 Constellation Boulevard, Suite 1850

Los Angeles, California 90067
(310) 201-4726
aaron.goodman@bakermckenzie.com

*Attorneys for Dan Peisert*