# EXHIBIT A

🚩 KeyCite Blue Flag – Appeal Notification

Appeal Filed by   Novo Nordisk Inc. v. WellHealth Inc.,   11th Cir.,   March 4, 2025

2025 WL 699769
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Jacksonville Division.

NOVO NORDISK INC., Plaintiff,

v.

WELLHEALTH INC., Defendant.

Case No. 3:23-cv-782-ACC-LLL
|
Signed January 30, 2025

**Synopsis**
**Background:** Healthcare company filed complaint against pharmacy pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), alleging pharmacy manufactured and sold drugs containing semaglutide without proper regulatory approval, and that drugs contained impurities. Pharmacy filed motion to dismiss on grounds that company's claims were preempted by the federal Food, Drug, and Cosmetic Act (FDCA), that complaint failed to state a claim, that pharmacy's conduct fell within FDUTPA's safe harbor provision, and for lack of standing.

**Holdings:** The District Court, Anne Conway, Senior District Judge, held that:

[1] company sufficiently alleged that it suffered injury in fact, as required for standing;

[2] claim alleging pharmacy jeopardized public health by selling new drugs without proper regulatory approval was impliedly preempted by the FDCA;

[3] claim alleging pharmacy's compounded semaglutide drugs contained impurities was impliedly preempted by the FDCA; and

[4] company failed to plausibly allege that pharmacy's conduct caused deception that was likely to cause injury to reasonable relying consumer, as required to state claim for violation of the FDUTPA.

Motion granted.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim; Motion to Dismiss for Lack of Standing; Motion to Dismiss.

West Headnotes (15)

**[1]    Federal Civil Procedure** 🔑 Claim for relief in general

Specific facts that are not necessary to state a claim for relief do not need to be included in a complaint.

**[2]    Federal Civil Procedure** 🔑 Matters deemed admitted;  acceptance as true of allegations in complaint

On a motion to dismiss for failure to state a claim, the district court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. Fed. R. Civ. P. 12(b)(6).

**[3]    Federal Civil Procedure** 🔑 In general;  injury or interest
**Federal Civil Procedure** 🔑 Causation;  redressability

To establish its standing under Article III of the United States Constitution, a plaintiff must have suffered an injury in fact that is concrete, particularized, and actual or imminent, fairly traceable to the challenged action, and redressable by a favorable ruling. U.S. Const. art. 3, § 2, cl. 1.

**[4]    Declaratory Judgment** 🔑 Proper Parties

In order to demonstrate that there is a case or controversy that satisfies the standing requirement of Article III when a plaintiff is seeking declaratory relief, as opposed to seeking damages for past harm, the plaintiff must allege

facts from which it appears that there is a substantial likelihood that he will suffer injury in the future. U.S. Const. art. 3, § 2, cl. 1.

**[5]  Injunction** 🔑 Persons entitled to apply; standing

Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate, as opposed to a merely conjectural or hypothetical, threat of future injury. U.S. Const. art. 3, § 2, cl. 1.

**[6]  Federal Civil Procedure** 🔑 In general; injury or interest

Economic injury is sufficient to establish standing under Article III. U.S. Const. art. 3, § 2, cl. 1.

**[7]  Antitrust and Trade Regulation** 🔑 Private entities or individuals

Healthcare company sufficiently alleged that it suffered an injury in fact as a result of pharmacy's conduct, as required for Article III standing, in action brought pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), alleging pharmacy manufactured and sold drugs containing semaglutide without proper regulatory approval, and that the drugs contained impurities; complaint alleged that company was the only company in the United States (US) with federally-approved products containing semaglutide, that pharmacy sold its drugs to customers in Florida and throughout the US, and that company, as a direct result of pharmacy's unlawful and unfair competition, had and would suffer lost sales and suffer harm to its goodwill and reputation. U.S. Const. art. 3, § 2, cl. 1; Fla. Stat. Ann. § 501.201 et seq.

**[8]  Federal Preemption** 🔑 Nature of preemption

Federal preemption is an affirmative defense.

**[9]  Federal Civil Procedure** 🔑 Affirmative Defenses, Raising by Motion to Dismiss

While the existence of an affirmative defense will not generally support a motion to dismiss for failure to state a claim, a complaint may be dismissed when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint. Fed. R. Civ. P. 12(b)(6).

**[10]  Federal Preemption** 🔑 Implied preemption

Implied preemption prohibits state-law claims attempting to enforce federal requirements for which there is no private right of action.

**[11]  Action** 🔑 Statutory rights of action

**Food** 🔑 Statutory and municipal regulations in general

A plaintiff cannot seek to privately enforce a duty that is owed to the Food and Drug Administration (FDA).

**[12]  Antitrust and Trade Regulation** 🔑 Preemption

**Federal Preemption** 🔑 Product safety; food and drug laws

Healthcare company's claim brought against pharmacy pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), alleging pharmacy jeopardized public health by selling new drugs without proper regulatory approval, was impliedly preempted by the federal Food, Drug, and Cosmetic Act (FDCA); to succeed on a claim that the product was unlawful under the FDUTPA, non-compliance with the FDCA was required, as the pre-market approval requirement under the Florida Drug and Cosmetic Act (DCA) relied on the FDCA. Federal Food, Drug, and Cosmetic Act § 1, 21 U.S.C.A. § 301 et seq.; Fla. Stat. Ann. §§ 499.023, 501.201 et seq.

**[13]** **Antitrust and Trade Regulation** 🔑 Preemption

**Federal Preemption** 🔑 Product safety; food and drug laws

Healthcare company's claim against pharmacy pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), alleging the compounded semaglutide drugs pharmacy manufactured and sold contained impurities which were likely to cause harm to consumer patients in Florida and company, was impliedly preempted by the federal Food, Drug, and Cosmetic Act (FDCA); even though company did not explicitly allege that pharmacy violated the FDCA, but rather, alleged that it sought to enforce a duty pharmacy owed to Florida consumers to forgo unfair trade practices, and not any duty owed to the Food and Drug Administration (FDA), its claim hinged on compliance with the FDCA, as the federal government had nearly exclusive authority to enforce the FDCA. Federal Food, Drug, and Cosmetic Act § 1, 21 U.S.C.A. § 301 et seq.; Fla. Stat. Ann. § 501.201 et seq.

**[14]** **Antitrust and Trade Regulation** 🔑 Other particular products

Healthcare company failed to plausibly allege that pharmacy's conduct caused deception that was likely to cause injury to a reasonable relying consumer, as required to state a claim for violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), in action alleging pharmacy manufactured and sold drugs containing semaglutide without proper regulatory approval, and that the drugs contained impurities; complaint merely alleged other public health incidents in other contexts had occurred and cited an increased number of adverse event reports for drugs containing semaglutide, which only alleged the possibility, as opposed to a probability of harm. Fla. Stat. Ann. § 501.201 et seq.

**[15]** **Antitrust and Trade Regulation** 🔑 Fraud; deceit; knowledge and intent

**Antitrust and Trade Regulation** 🔑 Reliance; causation; injury, loss, or damage

For purpose of a claim asserting a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), an unfair practice requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer. Fla. Stat. Ann. § 501.201 et seq.

**Attorneys and Law Firms**

Jordan Scott Cohen, Wicker, Smith, O'Hara, McCoy & Ford, P.A., Fort Lauderdale, FL, Kurt G. Calia, Pro Hac Vice, Covington & Burling LLP, Palo Alto, CA, Amee M. Frodle, Pro Hac Vice, Cara E. Souto, Pro Hac Vice, Michael X. Imbroscio, Pro Hac Vice, Covington & Burling LLP, Washington, DC, Gregory L. Halperin, Pro Hac Vice, Covington & Burling LLP, New York, NY, for Plaintiff.

Diane Katzen, Terri T. Meyers, Kluger Kaplan, Miami, FL, for Defendant.

**ORDER**

ANNE C. CONWAY, United States District Judge

**\*1** This cause comes before the Court on Defendant WELLHealth Inc.'s Motion to Dismiss. (Doc. 47). Plaintiff Novo Nordisk Inc. has filed a response in opposition. (Doc. 49). For the reasons set forth below, the Court will grant the motion.

**I. BACKGROUND**

The allegations in the First Amended Complaint are as follows.[1] Novo Nordisk is a healthcare company that provides three FDA-approved medicines, Wegovy®, Ozempic®, and Rybelsus®, containing semaglutide, for weight management and diabetes. (First Amended Complaint, Doc. 44 ¶¶ 2, 3, 32, 33). Novo Nordisk is the only company in the U.S. with FDA-approved products

containing semaglutide. (*Id.* ¶¶ 3, 32, 55). WELLHealth, a small pharmacy that compounds and dispenses drug products, (*id.* at ¶ 27), has neither FDA nor Florida pre-market approval for dispensing semaglutide, and the compounded semaglutide drugs are alleged to contain impurities. (Doc. 44 ¶¶ 10, 22, 27, 77).

Novo Nordisk brings this action pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* in an effort to stop WELLHealth from unlawfully manufacturing and selling the adulterated compounded drugs. (Doc. 44 ¶10). Novo Nordisk alleges WELLHealth has violated the FDUTPA in two ways. First, Novo Nordisk alleges that WELLHealth jeopardizes public health by selling new drugs without proper regulatory approval, which has and will continue to harm and injure consumers and Novo Nordisk. (Count I). (*Id.* ¶¶ 24, 63, 60-73). Second, Novo Nordisk alleges WELLHealth's drugs contain impurities, which is likely to cause harm to consumer patients in Florida and Novo Nordisk. (Count II) (*Id.* ¶¶ 55, 74-87). Novo Nordisk seeks injunctive and declaratory relief. (*Id.* at 25-26).

WELLHealth moves to dismiss on numerous grounds. First, WELLHealth argues Novo Nordisk's claim is preempted and constitutes a prohibited private enforcement of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, which is within the sole power of the FDA, citing 21 U.S.C. 337(a). Second, WELLHealth moves to dismiss on the grounds Novo Nordisk has failed to plausibly allege a claim pursuant to Fed. R. Civ. P. 12(b)(6). Third, WELLHealth argues the alleged conduct falls within the FDUTPA's safe harbor provision. And finally, WELLHealth argues Novo Nordisk does not have Article III standing to pursue its claims.

## II. LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**\*2** **[1]** **[2]** Specific facts that are not necessary to state a claim for relief do not need to be included in a complaint. *Id.* Legal conclusions or a recitation of the elements of a cause of action are insufficient to satisfy a plaintiff's burden to prove he is entitled to relief. *Id.* at 555, 127 S.Ct. 1955. A facially plausible claim must plead facts that give rise to a reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

## III. ANALYSIS

### A. Standing

After carefully reviewing the allegations in the First Amended Complaint, I find Novo Nordisk's allegations are sufficient to establish its standing because Novo Nordisk alleges WELLHealth's conduct has caused lost sales and harm to its good will and reputation, which will continue absent injunctive relief. (Doc. 44 ¶¶ 66, 80).

**[3]** **[4]** **[5]** **[6]** To establish its standing under Article III of the U.S. Constitution, a plaintiff must have suffered an "injury in fact" that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010); *see also* *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). "In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm— the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.' " *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210-11 (11th Cir. 2019) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

F.3d 1342, 1346 (11th Cir. 1999)). The Eleventh Circuit applies this same standard to claims for injunctive relief: "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." ⚑ *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). Economic injury is sufficient to establish standing. *Eli Lilly & Co. v. Wells Pharmacy Network, LLC*, No. 5:23-CV-576-JSM-PRL, 2024 WL 1641673, at *2 (M.D. Fla. Feb. 5, 2024) (citing ⚑ *Debernardis v. IQ Formulations LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019)).

Here, Novo Nordisk has alleged it "is the only company in the United States with FDA-approved products containing semaglutide," (Doc. 44 ¶ 55), that "Defendant sells its compounded drugs to customers in Florida and other states," (*id.* ¶ 56), and that Novo Nordisk sells its semaglutide-based products throughout the United States. (*Id.* ¶ 32). Novo Nordisk alleges that "absent Defendant's unlawful and unfair actions, sales made by Defendant in Florida and in these other states would and will have been made by Novo Nordisk; thus, Novo Nordisk has and will suffer lost sales and customers as a direct result of Defendant's unlawful and unfair competition," (*id.* ¶ 58), and further, "as a result of Defendant's unlawful and unfair competition, Novo Nordisk has suffered harm to its goodwill and reputation." (*Id.* ¶¶ 59, 72, 86).

**[7]** Based on these allegations, as well as the holdings in similar lawsuits brought by Novo Nordisk against other compounding pharmacies, Novo Nordisk has standing to bring this claim. In a nearly identical lawsuit, Judge Jung held that Novo Nordisk had standing to sue "[b]ecause Defendant also creates, manufactures, and sells drugs that contain semaglutide in the same geographical areas where Novo Nordisk conducts business, the parties are in economic competition. Thus, the Court can reasonably infer that any sale by Defendant reduces, and will continue to reduce, Plaintiff's individual profits." *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*, No. 8:23-CV-1503-WFJ-TGW, 2023 WL 7385819, at *2 (M.D. Fla. Nov. 8, 2023) (internal citations omitted); *see also Novo Nordisk Inc. v. DCA Pharmacy*, 745 F.Supp.3d 626, 630 (M.D. Tenn. 2024) (finding *Brooksville* persuasive and likewise finding Novo Nordisk's alleged "present and future economic injury-in-fact" sufficient to support standing). Other courts have held drug companies who are sole suppliers of FDA-approved

products have standing to sue compounding stores when they have alleged lost income from ongoing sales and reputational harm. *Eli Lilly & Co. v. Wells Pharmacy Network, LLC*, No. 5:23-CV-576-JSM-PRL, 2024 WL 1641673, at *2 (M.D. Fla. Feb. 5, 2024); *Eli Lilly & Co. v. RXCompoundStore.com, LLC*, No. 23-CV-23586, 2024 WL 1554339, at *4 (S.D. Fla. Apr. 9, 2024). Accordingly, the motion to dismiss is denied to the extent it challenges Novo Nordisk's Article III standing.

### B. Preemption

**\*3** **[8]** **[9]** Federal preemption is an affirmative defense. *See* ⚑ *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). While "the existence of an affirmative defense" will not generally "support a motion to dismiss[,] ... a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." ⚑ *Id.*

WELLHealth moves to dismiss on the grounds of implied preemption, arguing that the FDA—and not a private party—has the exclusive authority to enforce or restrain violations of the FDCA. 21 U.S.C. § 337(a).[2] Novo Nordisk argues that implied preemption is inapplicable when the alleged wrongdoing gives rise to liability under state law even if the FDCA did not exist. (Doc. 49 at 6-14).

Congress passed the FDCA in 1938, which created the FDA and charged the FDA with ensuring that "drugs are safe and effective." ⚑ 21 U.S.C. §§ 393(a), ⚑ (b)(2)(B). Pursuant to Section 505 of the FDCA, most prescription drugs require premarket approval by the FDA in order to be sold. ⚑ 21 U.S.C. § 355(a) ("No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug."). However, the FDCA creates an exception to this premarket approval requirement for qualifying compounding pharmacies and outsourcing facilities. *See* ⚑ 21 U.S.C. §§ 353a, b. "[T]he FDCA and its regulations provide the United States with nearly exclusive enforcement authority, including the authority to seek criminal sanctions in some circumstances. ⚑ 21 U.S.C. §§ 333(a), 337. *Private parties may not bring enforcement suits. § 337.*" ⚑ *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109, 134 S.Ct. 2228,

189 L.Ed.2d 141 (2014) (emphasis added); *see also Novo Nordisk,* 2023 WL 7385819, at *2 ("The United States has sole enforcement authority under the FDCA.... Private enforcement of the FDCA is barred.").

[10] [11] Implied preemption prohibits state-law claims attempting to enforce federal requirements for which there is no private right of action. *Mink v. Smith & Nephew, Inc.,* 860 F.3d 1319, 1327 (11th Cir. 2017). A plaintiff cannot seek to privately enforce a duty that is owed to the FDA. *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 353, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). In *Buckman*, the Supreme Court addressed implied preemption under the FDCA and section 337(a), explaining that the FDA has the sole authority "to police fraud consistently with the Administration's judgment and objectives" and held that plaintiffs' claims were preempted because those claims "exist[ed] solely by virtue of the FDCA disclosure requirements" and permitting such claims to proceed would "skew[ ] ... [the] delicate balance of statutory objectives" the FDA seeks to achieve in enforcing the FDCA's requirements. 531 U.S. at 350, 352-53, 121 S.Ct. 1012. In finding these claims impliedly preempted under the FDCA, the Supreme Court explained that the claims "exist[ed] solely by virtue of the FDCA ... requirements." *Id.* at 353, 121 S.Ct. 1012. Plaintiffs were not "relying on traditional state tort law which had predated the federal enactments in question," but "the existence of these federal enactments [were] a critical element in their case." *Id.* Therefore, to avoid implied preemption, the Court explained, claims must be based not on the FDCA, but on common law or "traditional state tort law [that] predated the federal law in question." *Id.*

**\*4** In its response in opposition, Novo Nordisk relies upon a trilogy of cases, specifically, *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022), *Mink*, 860 F.3d at 1330, and *Godelia v. Doe 1*, 881 F.3d 1309, 1320 (11th Cir. 2018), which hold that state-law claims based on conduct that violates the FDCA can escape implied preemption in some circumstances if the alleged wrongdoing would give rise to liability under state law even if the FDCA did not exist.

The purpose of the Florida DCA is conformity and uniformity with the federal FDCA. *See* Fl. Stat. § 499.002(1)(b), (c) (stating its purpose to "[p]rovide uniform legislation to be administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the Federal FDCA and that portion of the Federal Trade Commission Act which expressly prohibits the false advertisement of drugs, devices, and cosmetics" and "[p]romote thereby uniformity of such state and federal laws, and their administration and enforcement, throughout the United States." The Florida DCA appears to have a private enforcement bar. *See* Fl. Stat. § 499.002(2) (granting Florida Department of Health administration and enforcement power). Here, the state law in question is the FDUTPA, which provides: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). The Florida DCA violation may be "unlawful" under the FDUTPA because it provides that no person may "sell, offer for sale, hold for sale, manufacture, repackage, distribute, or give away any new drug unless an approved application has become effective under s. 505 of the federal act or unless otherwise permitted by the Secretary of the United States Department of Health and Human Services for shipment in interstate commerce." Fla. Stat. § 499.023.

Drug manufacturers have been litigious in this area, with little success. In *Novo Nordisk*, plaintiff sued a compounding pharmacy, alleging in the original complaint that defendant, by manufacturing and selling to the public, without FDA approval, drugs containing semaglutide, violated the Florida DCA and FDUTPA, Fla. Stat. §§ 501.201-.213. 2023 WL 7385819 at *1. In holding that the plaintiff's FDUTPA claim was preempted by the FDCA, Judge Jung reasoned that —in spite of Novo Nordisk's artful pleading—the FDCA regulations were a "critical element" of the case, transforming the plaintiff's cause of action into an attempt to "private[ly] enforce [ ]" the FDCA. *Id.* at *3-4.

WELLHealth relies on the Ninth Circuit case wherein Nexus Pharmaceuticals sued a compounding pharmacy for manufacturing drugs that were allegedly copies of Nexus's FDA-approved drug. *Nexus Pharms. Inc. v. Cent. Admixture Pharm. Servs.*, 48 F.4th 1040, 1046 (9th Cir. 2022). Nexus alleged that defendants engaged in unfair competition because they were selling an unapproved drug when plaintiff has the FDA-approved version. "Put another way, Nexus alleges that [d]efendants' actions constitute unfair competition because they are not following

the rules—and those rules are the FDCA rules." *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, No. SACV2001506CJCJDEX, 2020 WL 6867069, at *3 (C.D. Cal. Nov. 18, 2020), *aff'd,* 48 F.4th 1040 (9th Cir. 2022). The district court held that, "[l]ike in *Buckman*, Nexus's claims exist only because of the FDCA's requirements [and] [c]onsequently, Nexus's unfair competition claims are impliedly preempted." *Id.* [3]

 **\*5** On appeal, Nexus failed in its attempt to reverse dismissal on preemption grounds. It cited multiple state statutes, including the Florida DCA, that "prohibit the sale of drugs not approved by the FDA." 48 F.4th at 1044. The Ninth Circuit held that these types of claims are akin to private enforcement of the FDCA, *id.* at 1049, and affirmed dismissal because the plaintiff sought to "enforce its interpretation" of the FDCA which was "a task reserved to the FDCA." *Id.* at 1050.

In *Novo Nordisk*, Judge Jung reasoned:

> The Court finds the instant case more analogous to *Nexus* than to *Jacob*, *Godelia*, and *Mink*. Plaintiff's claim, as written, is that Plaintiff suffers economic loss due to Defendant's violation of the Florida Drug and Cosmetic Act, which is itself "a law that says in substance 'comply with the FDCA.' " *Id.* at 1050. The Court can identify no alleged conduct that would "give rise to liability under state law even if the [FDCA] did not exist." *Jacob*, 40 F.4th at 1336 (citations omitted).

*Novo Nordisk*, 2023 WL 7385819, at *3. Judge Jung held that Novo Nordisk's claim, as originally asserted, was preempted by the FDCA. *Id.* at *3-4.

Soon thereafter, relying on *Novo Nordisk* and *Nexus,* Judge Moody dismissed on preemption grounds Eli Lilly's FDUTPA claim which alleged Defendant unlawfully sold competing compounded drug products, concluding this claim was based on a violation of the FDCA, rather than a state tort duty of a manufacturer to use due care. *Eli Lilly & Co. v. Wells Pharmacy Network, LLC,* No. 5:23-CV-576-JSM-PRL, 2024 WL 1641673, at *3 (M.D. Fla. Feb. 5, 2024) (citing, inter alia, *Novo Nordisk*, 2023 WL 7385819, at *1). There, Eli Lilly failed it its attempt to rely on *Mink,* *Godelia* and *Jacob,* because in those cases,

the Eleventh Circuit addressed whether the plaintiffs' state law negligent manufacturing defect claims were based on a traditional state tort duty of a manufacturer to use due care in manufacturing, rather than a violation of the FDCA. *Id.*; *see also Eli Lilly & Co. v. RXCompoundStore.com, LLC,* No. 23-CV-23586, 2024 WL 1554339, at *6 (S.D. Fla. Apr. 9, 2024) (dismissing on preemption grounds allegations that compounding pharmacy engaged in unfair trade practices in violation of FDUTPA by unlawfully manufacturing and selling non-FDA approved drugs in Florida, noting "we won't allow the Plaintiff to use state law as a back door to privately enforce the FDCA").

 **[12]** Here, as in *Novo Nordisk* and the *Eli Lilly* cases, the existence of the FDCA is a critical element of Count I ("Sale of New Drug Without Approval"), and the claim is impliedly preempted. Count I alleges WELLHealth unlawfully manufactures and sells unapproved compounded drugs in Florida in violation of Fla. Stat. § 499.023. (Doc. 44 at ¶ 63). Novo Nordisk has alleged that the sale of unapproved semaglutide drugs have potential to cause harm, and that by ignoring the drug approval process, WELLHealth enjoys an unfair competitive advantage over Novo Nordisk. (Doc. 44 ¶¶ 23, 29, 58, 59, 63). Although it is artfully written, to succeed on its claim at Count I that WELLHealth's product is unlawful under the FDUPTCA, non-compliance with the FDCA is required because the pre-market approval requirement under the Florida DCA relies on the FDCA. *Buckman*, 531 U.S. at 353, 121 S.Ct. 1012. Accordingly, Count I is dismissed on the grounds of preemption.

In Count II, Novo Nordisk alleges that manufacturing and selling drugs with impurities capable of causing serious and life-threatening reactions like anaphylaxis is an unfair practice, calling it "immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and to Plaintiff." (Doc. 44 ¶ 78). According to Novo Nordisk, Count II is not preempted because the Florida DCA prohibits and defines adulteration without reference to any federal law. *See* § 499.005(1), Fla. Stat.; § 499.006(2), (7) (defining adulterated drugs to include those "produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health" and those whose "strength differs from, or [their] purity or quality falls below the standard of, that which [they] purport[ ] or [are] represented to possess"). (Doc. 49 at 12). Novo Nordisk argues that WELLHealth's conduct can give rise to liability under state law regardless of the FDCA, and thus, is not preempted. (Doc. 49 at 13).

**\*6** **[13]** Novo Nordisk's attempt to characterize its second cause of action as seeking to enforce a duty WELLHealth owes to Florida consumers to forgo unfair trade practices— not any duty owed to the FDA—rings hollow. The FDUTPA claim hinges on FDCA compliance, even though Novo Nordisk has not explicitly alleged that WELLHealth violated the FDCA. The Court "therefore agree[s] with our colleagues around the country who have repeatedly 'concluded that claims based on allegations that a defendant violated the FDCA are impliedly preempted.' " *RXCompoundStore.com,* 2024 WL 1554339 \*6 (citing *Markland v. Insys Therapeutics, Inc.*, 270 F. Supp. 3d 1318, 1328 (M.D. Fla. 2017)) (Howard, J.) "Given the federal government's "nearly exclusive" authority to enforce the FDCA, courts around the country have generally refused to encroach on that authority by adjudicating claims that a party has (or has not) complied with the FDCA—even where the plaintiff tries to bring its claims under other federal or state statutes." *RXCompoundStore.com,* 2024 WL 1554339, at \*5 (citing *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) and *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 2023 WL 6301651, at \*4 (S.D. Tex. Sept. 27, 2023)).

Accordingly, the motion to dismiss on the basis of implied preemption is granted as to both Counts I and II and the First Amended Complaint (Doc. 44) is dismissed with prejudice. [4]

### C. Failure to State a Claim

**[14]** **[15]** Next, WELLHealth argues that Novo Nordisk has failed to state a claim for violations of the FDUTPA. Because Counts I and II are preempted, the Court need not address whether the Novo Nordisk has failed to state a claim. However, after a careful review of the operative pleading, the allegations do not allege injury or detriment to any specific consumer or otherwise, and instead allege the mere possibility, as opposed to a probability, of harm. An unfair practice "requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.' " *Zlotnick v. Premier Sales Grp., Inc.,*

480 F.3d 1281, 1284 (11th Cir. 2007) (citing *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla. Dist. Ct. App. 2000)). Novo Nordisk merely alleges other public health incidents in other contexts have occurred and cites an increased number of adverse event reports for drugs containing semaglutide. These FDUTPA claims would not survive dismissal for failure to state a claim. *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at \*15 (M.D. Fla. Feb. 15, 2018).

### D. Safe Harbor

Finally, WELLHealth argues that the safe harbor provision under FDUTPA bars the claim, however, this issue is not properly before the court, as it is an affirmative defense that Defendant must prove, and the defense does not clearly appear on the face of the complaint. *Quiller,* 727 F.2d at 1069; *Diamond Resorts U.S. Collection Dev., LLC v. Neally,* 2021 WL 8773523, at \*5 (M.D. Fla. Oct. 15, 2021).

### IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendant WELLHealth Inc.'s Motion to Dismiss (Doc. 47) is **GRANTED**.

2. The First Amended Complaint (Doc. 44) is **DISMISSED** with prejudice.

3. The Clerk of Court is **DIRECTED** to close this case.

4. Any pending deadlines and hearings are **TERMINATED** and any pending motions are **DENIED** as moot.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on January 30, 2025.

### All Citations

--- F.Supp.3d ----, 2025 WL 699769

---

**Footnotes**

1   On May 30, 2024, Novo Nordisk sought leave, opposed by WELLHealth, to file an amended complaint, which added a second claim at Count II. (Docs. 38, 41, 44).

2   Although Novo Nordisk believes WELLHealth has not specifically argued that the second cause of action is preempted," (Doc. 49 at 10), I will address implied preemption as to both Counts I and II.

3   Novo Nordisk cites *Allergan, Inc. v. Athena Cosmetics, Inc.,* 738 F.3d 1350, 1355–56 (Fed. Cir. 2013), however, that court "did not address the FDCA's prohibition of private enforcement." *Nexus,* 48 F.4th at 1050.

4   Novo Nordisk does not seek leave to amend in its response and amendment has previously been granted. (Doc. 43). Because preemption cannot be cured by amendment here, leave to amend is denied on the grounds of futility. Fed. R. Civ. P. 15(a).

---

**End of Document**     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---